BIDDLE ET AL., RECEIVERS v. RILEY.

Opinion delivered April 26, 1915.

1.  RECEIVERSHIP—RAILROADS—LIABILITY OF NEGLIGENCE.—Where a railroad company is in the hands of receivers, and another railroad is permitted to use its tracks for certain purposes, the receivers are responsible for negligence resulting in injuries to third persons, whether caused by acts of their own servants or of those of the other company using the line.

2.  RAILROADS—NEGLIGENCE—LIABILITY OF RECEIVERS.—The receivers of a railroad company owe a duty to passengers on their line to see that they are not injured through the negligence of other persons using the track.

3.  PARTIES—SERVICE—NONSUIT—TRIAL.—Kirby's Digest, § 6191, which provides that "the plaintiff can only demand a trial at any term as to part of the defendants, upon his discontinuing his action upon the first day of such term as to the others," applies only to cases when there is a failure to serve part of the defendants, and the plaintiff elects to proceed to a trial, and provides that this can be done only when there is a nonsuit taken on the first day of the term as to the defendants' not served.

4.  PARTIES—MISJOINDER—NONSUIT.—Where several defendants have been improperly joined in an action, and the plaintiff takes a nonsuit as to those not proper parties, it is not error for the court to permit the trial to proceed as to the proper parties, and Kirby's Digest, § 6191, does not apply.

5.  EVIDENCE—DAMAGES—NON-EXPERT OPINION.—In an action for damages for personal injuries, in estimating the amount of plaintiff's damages, it is proper to permit him to testify as to the cost of procuring the services of a nurse, and that the same would cost a certain amount, such testimony not being a matter of special or expert knowledge.

6.  TRIAL—AMENDMENTS TO PLEADINGS.—A trial court may permit an amendment at any stage of a trial, which will not operate to the prejudice of the defendant in their preparation for the trial.

7.  EVIDENCE—PERSONAL INJURY ACTION—PHYSICAL CONDITION OF PLAINTIFF—OPINION OF PHYSICIAN.—A medical expert may base his opinion upon a clinical history of the case under consideration, and in

order to make his testimony intelligible, he may testify to the observations that he made, and also as to what his patient said to him in describing his bodily condition and the character and manifestations of his sickness, pains, etc.

8.  EVIDENCE—EXPERT TESTIMONY—HYPOTHETICAL QUESTION.—Where, in stating a hypothetical question to expert witnesses, none of the undisputed material facts were omitted from the question, and all the matters submitted therein were such as there was testimony tending to prove, it will not render the answers of the witnesses incompetent that the questions were to some extent based upon matters which had come to the personal knowledge of the witnesses.

9.  RAILROADS—PERSONAL INJURIES—COLLISION.—When defendant railway permitted another railroad company to use its tracks, and plaintiff, a passenger on the former, was injured by a collision between trains of the two roads, *held,* the accident constituted *prima facie* proof of negligence on the part of the defendant, justifying a recovery by plaintiff, unless it was shown by a preponderance of the testimony that the injury occurred without negligence on its part.

10.  NEGLIGENCE—PRESUMPTIONS—ALLEGATIONS.—In an action for damages due to personal injuries, the plaintiff may take advantage of the general presumption which arises, even though he has made one or more specific allegations of negligence in his complaint.

11.  EVIDENCE—PERSONAL INJURY ACTION—CHARACTER OF PLAINTIFF.—When plaintiff received personal injuries due to defendant's negligence, in estimating the amount of damages, it is proper to present to the jury proof of plaintiff's moral character, as well as his habits of sobriety and industry.

Appeal from Crawford Circuit Court; *Jeptha H. Evans,* Judge; affirmed.

*W. F. Evans, B. R. Davidson, George S. Ramsey, Edgar A. de Mueles* and *Farrar L. McCain,* for appellants.

1.  Appellants and the St. Louis & San Francisco Railroad Company were sued jointly, and both were served with process. When, on the tenth day of the term, the plaintiff elected to take a nonsuit, or to discontinue the case as to the railroad company, this worked a continuance for the term, and the court erred in forcing appellants into trial at that term. Kirby's Dig., § 6191; 4 Ark. 509; *Id.* 546; 18 Ark. 361; 9 Ark. 455-462; 33 Ia. 356; 8 Nev. 239; 21 Enc. Pl. & Pr. 957; 36 Tex. 315-317; 73

Ark. 183-187; 83 Ark. 6-8; 58 Ark. 136; 66 S. W. 375; 88 S. W. 37.

2. It was erroneous to permit the plaintiff, who was not shown to possess any knowledge of the value of nurse hire, to testify what it would cost to secure the services of a nurse by the day. 55 Ark. 65; 108 Mich. 350, 66 N. W. 218; 130 U. S. 611-620; 30 S. W. 254; 27 S. W. 920.

3. It was erroneous to permit the plaintiff in making out his case in chief to introduce testimony, over the objection of defendants, that he was a moral, honest, hardworking, model, exemplary young man. Every person is presumed to have a good moral character until the contrary is shown, and this presumption obtains as well with reference to earning capacity as to character as a witness. Such testimony is not admissible in a civil case until the reputation of the witness has been attacked. 91 S. W. 691; 113 Ala. 360, 21 So. 366; 113 N. W. 1118; 57 Ind. 378; 33 S. W. 249; 129 S. W. 863; 15 Am. Neg. Rep. 372; 7 Conn. 116; 110 Cal. 414; 20 S. E. 763; 23 Pa. St. 424; 84 *Id.* 446; 68 Ia. 737; 7 Ind. 17; 62 Ark. 267; 1 Atl. 605; 36 Fed. 657; 101 Ind. 582; 128 S. W. 677; 1 L. R. A. (N. S.) 198-201; 64 S. W. 923; 129 S. W. 863; 60 S. W. 669; 76 S. E. 711.

4. The conclusions of physicians who have been called not for the purpose of treatment, but for the purpose of becoming witnesses, based upon a history of the case, consisting largely of self-serving statements, related by the plaintiff a month or more after the injury, were not admissible. 70 Fed. 21; 206 Fed. 765; 16 L. R. A. 437; 20 Am. St. Rep. 17; 38 Atl. 683; 41 S. W. 517; 28 Atl. 102; 80 Mich. 237; 63 N. W. 172; 100 N. W. 788; 132 Mass. 439.

Opinions based upon hypothetical questions which do not embrace essential facts nor a substantial part of them, as shown by the evidence, are not admissible. 100 Ark. 518-524; 103 Ark. 196-199.

It was clearly erroneous for the court to allow the plaintiff to make an exhibition of himself before the jury

by having one of his physicians to stick pins in his leg. Such a test was admittedly not conclusive, but was of such a character as to unduly arouse the sympathies of the jury, and that it succeeded is reflected in the excessive verdict.  90 S. W. 511-514; 101 N. W. 1011; 177 N. Y. 359.

5.  Instruction 1, given by the court on its own motion, was erroneous.  There were specific allegations of negligence contained in the complaint, yet, notwithstanding these, the court by that instruction applied to the case the doctrine of *res ipsa loquitur.*

The specific omissions charged do not constitute negligence under the facts in the case; and there is no lookout statute in the State of Oklahoma, where the accident occurred.  217 Fed. 956; 26 Okla. 788, 110 Pac. 776; Pomeroy's Code Remedies (4 ed.), 682; *Id.* 614; *Id.,* § 448; 31 Cyc. 85; 29 Okla. 797, 119 Pac. 1008; 66 S. W. 906; 132 S. W. 975; 202 Mo. 576, 101 S. W. 32; 155 S. W. 1092; 99 S. W. 1062, 8 L. R. A. (N. S.) 929; 126 S. W. 126; 52 Tex. C. App. 550, 114 S. W. 186; 119 Ga. 837; 23 Okla. 588, 101 Pac. 1126, 22 L. R. A. (N. S.) 892; 22 Mont. 445, 56 Pac. 867; 62 N. W. 301; 49 S. W. 868; 10 Pac. 821; 40 N. E. 65; 53 N. E. 464.

That the doctrine of *res ipsa loquitur* does not apply to this case, and that the complaint must stand or fall upon the specific issues of negligence tendered, is sustained by this court.  63 Ark. 563; 88 Ark. 12, 114 S. W. 230; 84 Ark. 311, 105 S. W. 573.  See, also, 83 Ark. 395; 87 Ark. 471; 82 Ark. 547; 65 Ark. 222; 89 Ark. 24; 88 Ark. 594; 85 Ark. 390, which sustain the principle that instructions should be confined to the issues made by the pleadings, and that instruction based on issues not raised by the pleadings are erroneous.

To charge the jury upon the facts developed and notwithstanding the complaint specified the act of negligence, that if the plaintiff was injured without fault on his part by reason of the train colliding with another train, this was *prima facie* proof of negligence, was contrary to the Constitution of this State.  43 Ark. 289; 45 Ark. 492; *Id.* 165; 57 Ark. 461; 51 Ark. 147; 85 Ark. 138;

83 Ark. 195. It was clearly erroneous to instruct them that upon proof of the collision, the plaintiff was entitled to recover "unless the defendants showed by a preponderance of the evidence that said injury occurred without negligence on their part." 228 U. S. 233, 33 Sup. Ct. Rep. 416.

6. There was no evidence that the Midland Valley Railway Company was and had been operating trains over the track of the railroad company in charge of the appellants, or that they were so operated with the knowledge and permission of appellants or their employees, and instructions based upon or assuming such a state of facts were erroneous.

*Pace, Seawel & Davis,* for appellee.

1. There was no error in requiring appellants to go into trial after the dismissal of the cause as to the railroad company. The statute, Kirby's Dig., § 6191, has no application to cases of this character. The statute is not mandatory, and does not do away with the discretion of the trial court in the matter of refusing or granting continuances. 57 Ark. 287; 37 Ark. 491.

2. The testimony as to the cost of securing the services of a nurse was competent. Appellee had the means and opportunity of acquiring knowledge of such cost. The jurors were competent to determine from their common knowledge and experience what such services would cost him. 87 Ark. 308.

3. Evidence as to the age, health, habits, etc., of appellee was admissible. This court has frequently declared that evidence of habits, etc., was competent, and that character should be considered in estimating the damages. 60 Ark. 559; 105 Ark. 533; 88 Ark. 225; 82 Fed. 158.

4. The medical testimony introduced by appellee was clearly within the rule declared by this and other courts. The hypothetical questions embraced all essential undisputed facts and also those established by appellee in the case. It was not necessary to preclude *all*

*facts* proved in the case. Appellee was entitled to include such facts as he conceived to have been proved and predicate his hypothetical question thereon. 83 Ark. 589; 98 Ark. 399; 106 Ark. 353; 98 Ark. 352.

5. There is no error in instruction 1 complained of by appellants. This court has already held the contention of appellant as untenable, and has refused to follow the doctrine in Missouri and other States, relied on by appellants. 40 Ark. Law Rep. 1; 95 Ark. 315; 34 Ark. 613; 51 Ark. 459; 90 Ark. 485; 57 Ark. 418; 104 Ark. 528.

For a discussion of the conflict of authorities upon this question, see 48 Wash. 233, and notes thereon in 24 L. R. A. (N. S.) 788.

6. There is sufficient evidence in the record to justify the second and third instructions complained of by appellants. There is no denial in the answer that *at the time of the injury,* the Midland Valley Railroad Company was being permitted to use the tracks of the St. Louis & San Francisco Railroad Company at the point where the injury occurred. Therefore, it stands admitted. 51 Ark. 459. Moreover, the law would charge the latter railroad company and its receivers with knowledge of the occupancy of this track by another railroad company, and if such use was long continued, acquiescence and consent would be inferred, especially so where, as in this case, the matter was peculiarly within the knowledge of the appellants, and no effort was made to contradict the evidence upon that question. 83 Ark. 94; 102 Ark. 499; 49 Fed. 209.

McCULLOCH, C. J. This is an action to recover damages on account of personal injuries received by the plaintiff Riley while he was a passenger enroute from Fort Smith to Mansfield over the railroad owned by the St. Louis & San Francisco Railroad Company, which was being operated by the defendants as receivers appointed by one of the courts of the United States. There was a collision of the train on which plaintiff was a passenger with a freight train operated over the same line by another company, towit: The Midland Valley Railroad

Company, at a point between Bonanza, Arkansas, and Jenson, Arkansas; the particular point where the collision occurred being, however, in the State of Oklahoma. The injuries received by the plaintiff were according to the evidence adduced by him, very severe, and caused him to suffer great pain and permanently destroyed his earning capacity. The evidence tended to show that he sustained a severe injury to the spine, spoken of by one or more of the physicians who testified in the case as a lesion of the spinal cord, and that he was completely paralyzed from his hips downward. It is alleged in the complaint that the Midland Valley Railroad Company had been using the track by permission of the St. Louis & San Francisco Railroad Company for a number of years, and that it was being so used at the time of the collision with the consent of the receivers. It is also alleged that the collision was caused by negligence of the employees in charge of defendant's train in failing to keep a lookout, and negligence on the part of the Midland Valley Railroad Company in having its train to occupy the track at that time when the passenger train operated by the defendants was expected to pass along, and negligence of the said Midland Valley Railroad Company, in failing to direct those in charge of the freight train to wait at Jenson until the passenger train of the defendants had passed that point. There was a verdict in favor of the plaintiff assessing damages in a very substantial amount, and the defendants have appealed from the judgment rendered thereon.

(1-2)   It is unnecessary to discuss the facts at any considerable length, for we are of the opinion that, according to the undisputed evidence, the defendant is responsible for the injuries which resulted to the plaintiff from the collision. The collision occurred between two trains operated along the line owned by the St. Louis & San Francisco Railroad Company in control of the receivers. The other company was permitted to use the track, and under well settled principles, the receivers are

responsible for negligence resulting in injury to third persons whether caused by their own servants or those of the other company using the line. They certainly owed the duty to their own passengers to see that they were not injured through the negligence of other persons using the track. The occurrence speaks for itself, and it would be a waste of words to discuss the question whether or not the operators of the line of railroad and the passenger train on which plaintiff was a passenger are responsible for the injury which resulted. The proof shows that the Midland Valley Railroad Company was allowed the use of the track, but that there was negligence in allowing the freight train to use the track at that point until the passenger train had passed. It is argued here that the proof fails to establish the fact that this track was owned by the St. Louis & San Francisco Railroad Company, and also that the track was being used by the other company with the consent of the receivers. We are of the opinion that there is no basis for that contention, as the proof shows quite satisfactorily that the track so used was a part of the line of railroad of the St. Louis & San Francisco Railroad Company, and had been used for several years by the Midland Valley Railroad Company. It would be a very technical estimate of the testimony to say that it is not established beyond dispute that the receivers were permitting the Midland Valley Railroad Company to use the track. A finding by the jury that the Midland Valley Railroad Company was a trespasser in undertaking to make use of the tracks would be entirely without any testimony whatever to justify it.

(3-4) The suit was first instituted against the St. Louis & San Francisco Railroad Company, as well as against the receivers, and all of the defendants were served with process; but the receivers demurred on the ground that they were improperly joined with the railroad company as defendants, and on the 10th day of the term, after the court had sustained the demurrer, the plaintiff elected to take a nonsuit as to the railroad company. The

remaining defendants, the receivers, then asked a post-ponement of the trial on the ground that under the statutes of this State, a nonsuit as to some of the defendants operated as a continuance of the case for the term. Counsel rely upon the statute which provides that in actions at law, other than those upon contract, wherein summons has been served upon part only of the defendants, "the plaintiff can only demand a trial at any term as to part of the defendants, upon his discontinuing his action upon the first day of such term as to the others." Kirby's Digest, § 6191. That statute applies only to cases where there is failure to serve part of the defendants, and the plaintiff elects to proceed to trial, and provides that this can be done only where there is a nonsuit taken on the first day of the term as to the defendants not served. This statute has no application to cases where there has been a misjoinder, and that error is corrected by entering a nonsuit as to those improperly joined. It is unnecessary to decide whether the statute is mandatory or merely directory, for it has no application to the present case.

(5-6)  Objection was made to the testimony of the plaintiff himself concerning the cost of nurse hire. His testimony tended to show that he was totally and permanently incapacitated from any kind of work, and would have to be constantly attended by a nurse, and he stated that the cost of procuring a nurse would be $3 a day. Objection was made on the two grounds that the plaintiff had not qualified himself to testify concerning the customary charges of nurses, and that there was no allegations in the complaint of injury in that respect. The plaintiff stated positively that he knew what the charges of nurses were, and that was not a matter of special or expert knowledge. The statement was sufficient to go to the jury for what it was worth. The complaint contained no allegation as to pecuniary loss to accrue in the future by reason of the expense for nurses, but we think that was unnecessary for the reason that his allegations concerning the extent of his injuries were sufficient to admit

proof of any loss which resulted from that injury. Moreover, the plaintiff, when the objection was made, offered to amend the complaint by putting in a specific allegation on that point, and no further objection was made by defendants. The court had the right to permit an amendment at any stage of the proceedings which would not operate to the prejudice of the defendants in their preparation for the trial, and it was not suggested to the court that this introduced new matter which would render it necessary for defendants to have additional time in which to meet the issue.

Numerous objections were made to the testimony of physicians who testified concerning the extent of plaintiff's injuries. There were no broken bones nor scars, no abrasions of the skin indicating objective symptoms, and the examination was to some extent subjective. The physicians were allowed to testify concerning exclamations and other verbal indications of pain, and inability on the part of the plaintiff to handle himself normally, and they were permitted to give their opinions based upon those matters as well as the appearance of plaintiff as indicated in their examination. One of the physicians was allowed to state that at the time he examined the plaintiff, shortly after the injury, the latter was unable to draw up his leg except very slowly, and complained of pain whenever he moved. Other physicians, who examined plaintiff at the time of the trial and immediately before that time, testified about tests that were made to determine whether or not his lower limbs were paralyzed. As before stated, they all gave their opinions based upon what may be termed the clinical history of the case thus obtained, and their own observations and the result of the tests which they made. It is insisted that the court erred in allowing the witnesses to express their opinions from that predicate.

(7) The rules of evidence bearing upon this subject are, we think, correctly stated, as follows: "A medical expert may base his opinion upon a clinical history

of the case under consideration, and in order to make his testimony intelligible, he may testify to the observations that he made, and also as to what his patient said to him in describing his bodily condition and the character and manifestations of his sickness, pains, etc. The reason for this rule is that the physician must oftentimes of necessity take into consideration such statements in reaching a conclusion as to the physical condition of the patient, and the nature and extent of his malady or injury; and hence the rule being founded on such necessity, it has been declared that it must be applied with caution, and not extended beyond the reason of necessity upon which it rests. It has been declared, however, that the mere statements made by a person as to his sufferings, pain, etc., which statement was made for the sole purpose of furnishing the expert with information on which to base an opinion, is not admissible, and that the witness, in testifying to what he has heard and observed, is confined to exclamations, shrinkings and other expressions which appear instinctive, intuitive and spontaneous.'' 5 Encyclopedia of Evidence, p. 608.

The rule on the subject is also stated by Mr. Jones, in his work on Evidence (2 ed.), section 349, as follows: ''Whenever it becomes material to show a person's condition of health, or motives, or state of mind, such person's declarations may often be received in evidence for such purpose, provided the requisites already pointed out are complied with; and it appears that such statements are spontaneous and undesigned, and that they illustrate the facts which are the subject of inquiry. In some of the decisions, the utterances are limited to groans and exclamations, and other involuntary exclamations of pain. But in others assertions and complaints as to present feeling are received more liberally. But on the grounds already stated, such declarations are confined to the present condition of the declarant. * * * Anything in the nature of narrative or statement is to be carefully excluded; and testimony is to be confined strictly to such complaints, ex-

clamations and expressions as usually and naturally furnish evidence of a present existing pain or malady."

These are the rules recognized by this court in the recent case of *Prescott & Northwestern Ry. Co.* v. *Thomas,* 114 Ark. 56, 167 S. W. 486; and also in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Williams,* 108 Ark. 387. Those rules were, we think, adhered to in the trial of this case, and that all the statements of the witnesses and the methods of their examination were competent.

(8)   It is claimed also that there was error in submitting the hypothetical questions to the witnesses, but we think there was no error in that regard. The questions were based to some extent upon matters which came to the knowledge of the witnesses through their personal examination of the plaintiff as well as matters entirely hypothetical which the testimony of the plaintiff himself tended to establish concerning his injury. But it was competent to embrace all those matters in the questions. *St. Louis & San Francisco Rd. Co.* v. *Fithian,* 106 Ark. 491. None of the undisputed material facts were omitted from the hypothetical questions, and all the matters submitted therein were such as there was testimony tending to prove. *Ford* v. *Ford,* 100 Ark. 518.

(9)   It is next contended that the court erred in instructing the jury, at the instance of the plaintiff, that proof of the fact that the injury occurred by the collision of the train on which plaintiff was riding with another train upon the track of the defendants, constituted *"prima facie* proof of negligence on the part of defendants, and would justify a recovery on the part of the plaintiff unless it is shown by a preponderance of the evidence that said injury occurred without negligence on their part." The contention is that the plaintiff, by specifically alleging one or more acts of negligence, abandoned the right to the presumption arising from the rule of *res ipsa loquitur.* Attention is also called to the fact that this injury occurred in the State of Oklahoma, where there is no lookout statute in force.

The general rule on the subject, stated by Mr. Elliott, is as follows: "The true rule would seem to be that when the injury and circumstances attending it are so unusual, and of such a nature that it could not well have happened without the company being negligent, or when it is caused by something connected with the equipment or operation of the road over which the company has entire control, a presumption of negligence on the part of the company usually arises from proof of such facts, in the absence of anything to the contrary, and the burden is then cast upon the company to show that its negligence did not cause the injury." 4 Elliott, Railroads, section 1644.

(10) Now, the proof shows beyond dispute, as we have already mentioned, the fact that plaintiff's injury resulted from a collision between defendant's train, on which the plaintiff was riding, and another train which the defendants were permitting to be operated along the track. Therefore, it is undisputed that the injury was caused either by the negligence of defendants' own servants operating the passenger train, or the servants of the other company for whom the defendants had made themselves responsible by permitting them to operate trains on that track. The proof shows just how the negligence occurred, namely, in the failure to hold the freight train at Jenson until the passenger train had passed. It would be putting form above substance to hold that under that state of the case, the plaintiff must start the trial over again under proper allegations specifically alleging these facts, when, under the facts proved in the case, he is entitled to recover. It is true, there are cases cited on the brief of counsel for defendant, holding that a specific allegation of negligence waives the general presumption arising from the maxim stated above, but that rule has never been adhered to in this State. On the contrary, this court, in the recent case of *St. Louis & San Francisco Rd. Co.* v. *Coy,* 113 Ark. 265, reiterated the rule long observed in this State that pleadings are treated as amended to conform to the proof in the case, and it necessarily results from the operation of that rule of practice here that the

plaintiff can take advantage of the general presumption which arises in the jurisdiction where the injury occurred, even though there are one or more specific allegations of negligence in the complaint. The just rule on the subject, and the one which we prefer to follow, is that "a plaintiff who proves the happening of an accident, and is otherwise entitled to certain presumptions arising therefrom, does not lose the benefit of such presumptions because he has alleged what he conceives to be the specific cause of the accident." *Kluska* v. *Yeomans* (Wash.), 103 Pac. 819.

(11) The only other assignment which we deem to be of sufficient importance to call for discussion is that which relates to the testimony of two or three witnesses who were permitted to testify concerning the moral character of the plaintiff. The witnesses were asked to state if they knew, what kind of a man the plaintiff was with reference to being "industrious, moral, upright and a hard-working man," and they stated that they knew his character and habits in these respects, and that he was an exemplary young man of good habits, and industrious and of good moral character. Objection was made to this, and the court decided that in addition to his habits of sobriety and industry, the plaintiff's moral character might be proved. It is insisted that that constituted error and was prejudicial for the reason that it bolstered up plaintiff's standing as a witness, and also introduced an improper element for consideration in estimating damages. The court expressly limited the consideration of this testimony to the question of the amount of his damages, and it can not be urged that there was any prejudicial effect for the reason that it was considered as sustaining the plaintiff's testimony before the jury. We think that under the facts of this case it was not improper to present to the jury proof of the plaintiff's moral character, as well as his habits of sobriety and industry, for the purpose of drawing a picture before the jury of the earning capacity of which he had been permanently deprived by the negligent acts which caused his injury. In *Ry. Co.* v. *Sweet*, 60 Ark. 550, we held that in a suit of this kind, brought

for the benefit of the next of kin, it was competent to introduce proof concerning the deceased as to his "character, business qualifications and capacity for earning money." In disposing of the matter, the court said: "It would be a travesty upon justice and a reproach to the law if the sobriety, industry, honesty and ability of deceased—the constituents of character, and the very things which determine a man's business qualifications—were not permitted to be considered by the jury." While it is true that that was said in a case in which the next of kin were seeking to recover compensation for an injury which totally deprived them of the earning capacity of one upon whom they were dependent, the same rule ought to and does apply in a case where the injured person himself sues for the recovery. If he is entirely deprived of the earning capacity which he would have enjoyed in the future, but for the injury received, he is entitled to show to the jury the manner of man he was so that they can estimate what his earning capacity would have been in the future. As was aptly said by this court in the *Sweet* case, *supra,* one of the chief things which determines business qualifications and earning capacity is moral character, and even though a man's activities are confined to manual labor, his moral character necessarily affects to a large degree his earning capacity, for even the humblest laborer is trusted on account of the good moral character which he has established among those who know him. There are cases, it is true, in which it is held that proof of moral character in cases of this sort is incompetent. Defendants rely especially upon the case of *L. & N. Ry. Co.* v. *Daniel,* 122 Ky. Rep. 256, 91 S. W. 691, decided by the Kentucky Court of Appeals. That was a well considered case and embraced not only this question, but the right of the plaintiff in a case of this sort to prove his habits of industry and sobriety. The reasoning of the court upon the first proposition is quite convincing, and establishes beyond controversy the justice of the rule by which habits of industry and sobriety may be proved. The discussion on the other subject is very short, and, to our minds, far

from satisfactory. The court intimates that such proof would necessarily be taken by the jury, according to the insistence of the defendants in this case, as bolstering up the character of the deceased, and for that reason should not be accepted. The proof was referred to in the opinion as establishing moral reputation of the plaintiff. It is not reputation that was sought to be established in this case, but character. Character is what a person is, and includes natural and acquired traits; while reputation is that which a person is thought to be by others, or, in other words, the popular estimate of him. "Character lives in a man; reputation outside of him."—J. G. Holland, in "Gold Foil." We think it entirely proper in a case of this kind for the plaintiff to prove his moral character; but it might not do to lay the rule down generally to be applied in all cases. This is true for the reason that in a case of partial decrease of earning capacity, the moral character which is still an asset of the injured man to help him in his future undertakings, and proof of it would have no bearing at all upon the extent of the partial loss of his earning capacity. In a case like this, however, where the proof shows that there is a total loss of earning capacity, the plaintiff is certainly entitled to introduce proof to the utmost to establish all the elements which enter into an estimate of his earning capacity so as to enable the jury to determine what the man has been deprived of.

The assessment of damages in this case is for a large amount, and there was a sharp conflict as to the extent of the plaintiff's injury, but the proof is sufficient to sustain the amount which the jury awarded, and the verdict is not alleged to be excessive; that is to say, there is no assignment in the motion for new trial that the verdict is excessive.

We find no prejudicial error in the record, and it follows that the judgment must be affirmed. It is so ordered.