## GENEVIEVE MORGAN v. GEORGE YAMADA.

### No. 1265.

EXCEPTIONS FROM CIRCUIT COURT FIRST CIRCUIT.
HON. J. T. DeBOLT, JUDGE.

ARGUED FEBRUARY 24, 1921.                    DECIDED APRIL 7, 1921.

COKE, C. J., KEMP AND EDINGS, JJ.

PLEADING—*action for damages—allegation of defendant's negligence.*

No form of words is necessary to specify the negligent act of the defendant causing the injury.

SAME—*same—maxim res ipsa loquitur.*

The doctrine *res ipsa loquitur* asserts that whenever a thing that produced an injury is shown to have been under the control and management of the defendant and the occurrence is such that in the ordinary course of events does not happen if due care has been exercised the fact of the injury itself will be deemed to afford sufficient evidence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care. The presumption thus raised is of course rebuttable.

SAME—*same—amended complaint.*

A party cannot by amending his complaint set up a new cause of action but the test of whether an amendment to a complaint sets up a new cause of action is whether a recovery on the original complaint would be a bar to a recovery under the amended complaint.

EVIDENCE—*testimony of expert witness.*

There is much conflict of authority respecting the propriety of permitting an expert to state what is reasonable or prudent or what a reasonably prudent man would do in a given case.

OPINION OF THE COURT BY COKE, C. J.
(Kemp, J., dissenting.)

This is an action for damages resulting from personal injuries. The original complaint alleged in substance that while plaintiff was walking in the public grounds known as the judiciary grounds situate on Mililani and King streets in Honolulu the defendant, acting through his agents and servants, wrongfully, negligently and in utter disregard of the safety and rights of plaintiff and without sounding any alarm or giving any warning to plaintiff which she could or did hear and without properly guying or steering the direction thereof pulled and razed the Mililani street wall of the opera house situated on Mililani street and King street so that a portion thereof fell outward and across an electric light wire charged with electricity causing said charged electric light wire to strike plaintiff on her body rendering her unconscious; that the breaking of said electric light wire and its contact with plaintiff were the direct result of the negligent and improper method of razing or demolishing said wall by defendant and were without fault on the part of plaintiff; that from said shock received by the plaintiff as aforesaid she did and does suffer intense pain, etc. At the trial and before the introduction of any evidence the plaintiff with leave of court amended

her complaint by striking out the words "charged" and "charged with electricity" otherwise leaving the complaint as it was. The trial proceeded and at the close of the evidence the plaintiff again asked and procured leave of the court to amend her complaint to make it conform to the proof, whereupon she filed her amended complaint in two counts in substance as follows:

"I. That heretofore, and on to wit, the 13th day of April, A. D. 1917, at Honolulu aforesaid, the defendant, through his duly authorized agents and servants was razing, demolishing and tearing down that certain building then situate on Mililani street and King street, in said Honolulu, theretofore and then known as 'The Opera House.'

"First Count. II. That on said 13th day of April, 1919 (1917), at about the hour of 4 o'clock P. M., plaintiff was walking in the public grounds in front and a part of the 'Judiciary Grounds' (so-called) situate on said Mililani and King streets, in Honolulu aforesaid or on the sidewalk on the Waikiki side of Mililani street or on said street. That while plaintiff was so walking as aforesaid, defendant herein, acting through his agents and servants as aforesaid, wrongfully, negligently and in utter disregard of the safety and rights of plaintiff and without sounding any alarm or giving any warning to plaintiff which she, said plaintiff, could or did hear, and without properly guying said wall or steering the direction thereof, pulled down and razed the Mililani street wall of said 'The Opera House' so that a portion thereof fell outward and into said Mililani street and across an electric light or other wire or pole, causing said electric light or other wire to strike said plaintiff on her body, and rendering her unconscious. That the fall of said pole and of said electric or other wire and the contact with plaintiff was the direct result of the negligent and improper method of razing or demolishing said wall by said defendant through his agents and servants as aforesaid, and was without fault on the part of said plaintiff.

"Second Count. And plaintiff further alleges that on

said 13th day of April, 1919 (1917), at about the hour of 4 P. M. plaintiff was walking in the public grounds in front and a part of the 'Judiciary Grounds' (so-called) situate on said Mililani and King streets, in Honolulu aforesaid, or on the sidewalk on the Waikiki side of Mililani street or on said street. That while plaintiff was so walking as aforesaid, defendant herein, acting through his agents and servants as aforesaid, wrongfully, negligently and in utter disregard of the safety and rights of plaintiff and without sounding any alarm or giving any warning to plaintiff which she, said plaintiff could or did hear, and without properly guying said wall or steering the direction thereof, pulled down and razed the Mililani street wall of said 'The Opera House' so that a portion thereof fell outward and into said Mililani street, and induced in said plaintiff reasonable fear and caused said plaintiff to run and fall down and become unconscious and to be hurt, and injured without any fault on her part. That from the premises aforesaid and from said injuries so received by the plaintiff as aforesaid, plaintiff did and does suffer intense pain and loss of strength, and has incurred permanent disabilities to her body and nervous system, is forced to leave and remain away from her usual employment, and is nervous and distraught, to the damage of the plaintiff in the sum of Five Thousand Dollars ($5,000.00)."

The cause proceeded upon the amended complaint and resulted in a verdict and judgment in favor of plaintiff for $1500 and the defendant brings exceptions.

We will first consider the exceptions raising the sufficiency of the complaint and challenging the action of the court in allowing amendments to the complaint. It is first contended by defendant that the original complaint does not state a cause of action and therefore could not be amended. The plaintiff does not concede that the original complaint could not be amended even if it be conceded that it does not state a cause of action, neither is it conceded that the original complaint does not state

a cause of action. We do not find it necessary to decide whether a complaint which does not state a cause of action can be amended for we think the original complaint does state a cause of action.

It is contended first that no facts are alleged which show in any way a duty to be owing from defendant to plaintiff, the argument being that no necessity for warning or other precaution is shown because the allegations of the original complaint do not locate her in the vicinity of the work being carried on by defendant. The complaint locates the building, the wall of which was being pulled down, at Mililani and King streets and locates the plaintiff in the front part of the judiciary grounds on Mililani and King streets. It is true that this is a rather indefinite statement of the relative positions of the plaintiff and the wall which defendant was pulling down but since it locates both at Mililani and King streets and places plaintiff in a place where it was lawful and proper for her to be we think it was sufficient to withstand a general demurrer and is therefore sufficient to withstand the attack now being made upon it.

It is also contended that the complaint fails to allege that the defendant was negligent in the discharge of any duty which he owed to plaintiff. Defendant undoubtedly owed to plaintiff, as he did to all other persons in the vicinity of the place he was carrying on the work of pulling down the wall, the duty of exercising ordinary care to protect her from any danger likely to result from the act about to be performed and to warn her of such danger unless the danger was obvious. (29 Cyc. 474.) The complaint alleges that the defendant wrongfully and negligently and in utter disregard of the rights and safety of plaintiff failed to properly guy the wall and steer the direction of its fall, etc. It is therefore not subject to the criticism under consideration. The remaining objection

to the original complaint is that it does not allege that the defendant's negligence was the proximate cause of her injury. The language of the complaint is that the breaking of said electric light wire and its contact with plaintiff were "the direct result of the negligence and improper method of razing or demolishing said wall," etc. True the term "proximate cause" does not appear in the complaint but no form of words is necessary and where the negligent act causing the injury is set out with an allegation that "by reason of, by, through, or in consequence of such negligence it is a sufficient as well as a direct allegation that defendant's negligence caused the injury or that it was wholly caused thereby." (29 Cyc. 573.)

In *Bunnell* v. *Berlin Iron Bridge Co.,* 66 Conn. 24, the complaint alleged that on October 25, 1893, the defendant was engaged in hoisting sundry iron girders and trusses and placing the same on a building on the west side of Ferry street in the city of New Haven, using for said purpose sundry derricks, blocks, falls and other hoisting apparatus; that the plaintiff was then in said Ferry street the same being a public highway; that by reason of the defective character of said apparatus, which fact was well known to the defendant, and because of the careless and negligent manner in which the servants of said defendant performed said work said hoisting apparatus broke while one of said girders or trusses was being hoisted by the defendant's servants and one of the derricks fell against said building thereby causing a large body of iron which had been carelessly placed on said building by said defendant to fall into the highway where the plaintiff was, which said body of iron struck and knocked down the plaintiff causing serious injuries to him. The court in discussing the sufficiency of this complaint said, at p. 35: "Nor is there any ground for the

defendant's claim, made in argument, that because the particular acts of the defendant's workmen which constituted the careless and negligent manner in which they performed the work mentioned were not specified in the complaint the allegation of negligence must be held to be merely an allegation of a conclusion of law. Such particularity is not ordinarily necessary—especially when the want of particularity is not objected to by an appropriate pleading—and is rarely employed. The complaint substantially alleges that the defendant so carelessly and negligently managed the apparatus described in the performance of the work described that the derrick fell against the iron frame-work causing that to fall and injure the plaintiff. This is in substance the sufficient and well established form for all such cases. Any want of clearness that may be claimed in its statement is a defect of form and not of substance and is cured by the judgment on default." It has been suggested in argument that the mere recital of circumstances under which this accident occurred would have been sufficient, in other words, that the maxim *res ipsa loquitur* applies. Few decisions dealing with the question of pleading in cases where this doctrine was held to be applicable have come to our attention. Most of the cases found in the books deal with the question of proof in such cases. But since one is not required to allege more than he must prove the cases appear to be authority on the question of pleading as well. There are a few cases, however, where the question of pleading in such cases was involved. In *Chiles* v. *Fort Smith Com. Co.*, 216 S. W. (Ark.) 11, 8 A. L. R. 493, where a demurrer to the complaint had been sustained, the supreme court summarized the allegations of the complaint as follows: "That a four-story business house was blown up and plaintiff's intestate killed; that the building and all gas and ammonia fixtures and appli-

ances therein were in the exclusive control of the defendant; that the intestate was rightfully in the building at the time of the explosion but had no duty to perform in connection with the instrumentalities which occasioned the injury; and that the cause of the explosion was unknown to plaintiff." After thus summarizing the allegations of the complaint the court said: "The concurrence of these conditions makes applicable the doctrine of *res ipsa loquitur.*" In the article on negligence in 20 R. C. L., p. 187, it is said: "More precisely the doctrine *res ipsa loquitur* asserts that whenever a thing that produced an injury is shown to have been under the control and management of the defendant and the occurrence is such that in the ordinary course of events does not happen if due care has been exercised, the fact of the injury itself will be deemed to afford sufficient evidence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care. * * * The presumption of negligence herein considered is of course a rebuttable presumption. It imports merely that the plaintiff has made out a *prima facie* case which entitled him to a favorable finding unless the defendant introduces evidence to meet and offset its effect. And of course where all the facts attending the injury are disclosed by the evidence, and nothing is left to inference, no presumption can be indulged—the doctrine *res ipsa loquitur* has no application." Section 158 of the same article says that the doctrine has found frequent application in cases of injuries from falling objects and substances and that the rule has been applied in many instances to injuries produced by the fall of awnings, signs, walls, buildings, building materials, tools, electric wires and many other objects. In *McCray* v. *G. H. & S. A. Ry. Co.*, 89 Tex. 168, the complaint alleged that the deceased in the performance of his duty was

riding on a freight train loaded with heavy steel rails which were laid horizontally with the cars on which they were loaded; that the train was being run at a great and unnecessary rate of speed; that the rails on a car directly in front of the one on which plaintiff's intestate was riding were not securely fastened and that while running down a grade one of the rails fell from the car (the other end remaining on the car), struck the ground and was thrown upward and across the car, striking and killing plaintiff's intestate. It was alleged that the rail fell and the death occurred because of the fast rate of speed and the negligent way in which the rail was placed and held on the car. (See opinion of the court of civil appeals in 32 S. W. at 548 for the allegations of the complaint.) The plaintiff, having proved that the deceased, a brakeman, was employed by the defendant company and at the time of his death was sitting on a car loaded with steel rails on the defendant's road going into the city of San Antonio and that the train was running at a rate of about 25 miles per hour when one of the steel rails fell from the flat car in front of the one on which deceased was sitting, one end of the rail striking the ground and the other one resting on the side of the car, in the language of a witness, "swept the whole north side of the train" and struck the deceased who was sitting on the north side of the car, killing him instantly, attempted to prove by a witness familiar with the proper manner of loading rails that if the rail had been properly loaded upon the car it could not have fallen off as it did. This evidence was excluded and the plaintiff having no other evidence than the circumstances of the accident with which to establish negligence the court instructed a verdict in favor of the defendant. These rulings were sustained by the court of civil appeals but the supreme court upon writ of error held not only that the evidence should have been received

but that the circumstances of the accident itself were sufficient to make a *prima facie* case in favor of plaintiff. In the course of the opinion Sherman and Redfield on Negligence, Sec. 59, is quoted with approval as follows: "In many cases the maxim *res ipsa loquitur* applies. The affair speaks for itself. It is not that in every case negligence can be assumed from the mere fact of the accident and of injury, but in these cases the surrounding circumstances which are necessarily brought into view by showing how the accident occurred contain without further proof sufficient evidence of the defendant's duty and of his negligence to perform it. The fact of the casualty and the attendant circumstances may themselves furnish all the proof of negligence that the injured person is able to offer or that it is necessary to offer."

The complaint before us contains either directly or by inference all of the elements necessary to concur to make applicable this doctrine. There is no direct allegation that the instrumentalities which caused the injury were in defendant's exclusive control, neither is it directly alleged that the plaintiff had no duty to perform in connection with the instrumentalities which caused the injury, but these facts are clearly made to appear from a consideration of the whole complaint. See also *Cummings* v. *National Furnace Co.,* 60 Wis. 603; *Barnowski* v. *Helson,* 15 L. R. A. 33; *Howser* v. *C. & Pa. Ry Co.,* 27 L. R. A. 154; *Byrne* v. *Boadle,* 2 Hurl. & Colt. (Exch.) 721.

One feature of this complaint which has not been argued but which seems to us to be of primary consideration in determining whether or not a proper case for the application of the doctrine *res ipsa loquitur* has been shown is the fact that plaintiff has specifically alleged one or more acts of negligence as the cause of the injury of which she complains. The authorities are not in com-

plete accord on the question of whether the plaintiff must
rely alone upon the acts of negligence alleged or may in a
proper case fall back upon the presumption which the
circumstances raise but we think it is established by the
weight of authority that the right to the presumption is
not lost by alleging what the plaintiff conceives to be the
specific cause of the accident. In *Biddle* v. *Riley*, 118
Ark. 206, 176 S. W. 134, 137, the court in discussing this
precise question quoted with approval from *Kluska* v.
*Yeomans*, 54 Wash. 475, 103 Pac. 819, 132 Am. St. Rep.
1121, as follows: "A plaintiff who proves the happening
of an accident and is otherwise entitled to certain pre-
sumptions arising therefrom does not lose the benefit of
such presumptions because he has alleged what he con-
ceives to be the specific cause of the accident." To the
same effect are *Cassady* v. *Old Colony St. Ry. Co.*, 184
Mass. 156, 68 N. E. 10, 63 L. R. A. 285, and *Walters* v.
*Seattle, etc. Ry. Co.*, 48 Wash. 233, 93 Pac. 419, 24 L. R.
A. (N. S.) 788.

We think therefore that the original complaint, while
not a model of good pleading under either theory, stated
a cause of action.

We next consider the argument that the first amend-
ment of the complaint made by striking out all reference
to the wire which struck plaintiff as being charged with
electricity substantially changed plaintiff's cause of action
and was therefore improperly allowed. Our statute (Sec.
2371 R. L. 1915) permits amendments which do not "sub-
stantially change the claim or defense." The same statute
authorizes a pleading to be amended by correcting a mis-
take in the name of a party or "a mistake in any other
respect." This amendment served to correct a mistake as
to the character or quality of the wire alleged to have
struck plaintiff. It is clear therefore that it was author-
ized by the statute unless precluded by the requirement

that there must not be a substantial change in the claim or defense. The claim in the original complaint was in effect that plaintiff was struck by an electric light wire charged with electricity and rendered unconscious. The claim as amended is that she was struck by the same wire, in the same manner, with the same result without any claim that it was charged with electricity. It is further argued that the final amended complaint, and especially the second count thereof, sets up an entirely new cause of action and was therefore not properly allowed under the statute. It is to be noted that in the second count of the amended complaint the injury which plaintiff alleges she received was the same as that alleged in all of the preceding pleadings and is alleged to be the result of the same negligence. We fail to see therefore how the many cases cited by her counsel to the effect that an amendment setting up additional grounds of negligence does not change the cause of action have, aside from the reasoning presented, any direct bearing upon the subject. We also fail to see how the cases cited by the defendant to the effect that the injury inflicted constitutes the gravamen of the offense have any direct bearing upon the question. The departure from the original complaint and from the first count of the amended complaint found in the second count is in the manner in which these acts of negligence operated to cause the injury of which she complains. In the one it is alleged in effect that the negligence of the defendant caused a wire to strike and injure her and in the other that the same acts of negligence induced in plaintiff reasonable fear and caused her to run and fall down and become injured.

If it were made to appear that the amendments allowed necessitated a substantial change in the proof on the part of the defendant to meet the case made by plaintiff the allowing of the amendment at the close of the

case would probably be an abuse of discretion, but this does not appear to be the case. Few of the cases cited undertake to lay down a general rule by which to test the amendment to a complaint in order to determine whether or not it sets up a new cause of action. However, in *Gropp* v. *Gt. Atl. & Pac. Tea Co.,* 126 N. Y. S. 211, it is said that "The test of whether an amendment to a complaint sets up a new cause of action is whether a recovery on the original complaint would be a bar to a recovery under the amended complaint." See also *Davis* v. *N. Y., L. E. & W. R. Co.,* 110 N. Y. 646.

Since each of the complaints in this case alleges the same acts of negligence on the part of the defendant and alleges the same injury to the plaintiff, the only variation being in the manner in which these acts of negligence operated to produce the injury, we are unable to perceive how the amendments can be said to have set up a new cause of action or to have substantially changed the claim or defense. We must therefore hold that the amendments were properly allowed.

It is further argued that the complaint as ultimately amended fails to state a cause of action and cannot therefore sustain the verdict. The amended complaint is in two counts. The case was submitted to the jury generally and the verdict is general. If therefore either count is fatally defective the verdict cannot stand. *Belt R. R. & Stock Yard Co.* v. *Mann,* 7 N. E. (Ind.) 893; *Baltimore & O. S. W. Ry. Co.* v. *Jones,* 62 N. E. (Ind.) 994. The first count is in substantially the same language as the original complaint after the striking out of the allegation that the wire in question was charged with electricity, except that portion which refers to the location of plaintiff when she received the injury of which she complains. The first count therefore need not be given any consideration other than to refer to what we have said as to the first amended

complaint. The second count contains an additional departure from the original complaint in that it alleges a different manner in which the negligence of defendant operated to produce the injury. But since it alleges the injury to have been brought about by conduct which a reasonably prudent person could have foreseen might result in an injury we think it stated a cause good against a general demurrer and therefore good against the attack now made upon it.

A number of exceptions to the instructions given the jury at plaintiff's request are urged. At the outset we call attention to the fact that the only evidence which the record before us furnishes that the instructions complained of were given is contained in the bill of exceptions. Each specific instruction excepted to is copied into the bill of exceptions but these do not purport to be all of the instructions read to the jury in behalf of the plaintiff and none of the instructions given at the request of the defendant is to be found in the record. We are unable to say in the absence of a complete record of the instructions read to the jury that any instruction, which read alone constitutes an incomplete statement of the law on the subject to which it relates, was not supplemented by other instructions and such defect thereby cured. From statements contained in the briefs we infer that quite a number of instructions were read to the jury at the request of the defendant but we are left entirely without means of ascertaining what those instructions were. It is not necessary to the completeness of instructions that the law applicable to all the questions be stated in a single instruction. It is sufficient that all the instructions read and considered together as a series contain a correct statement of the law for in such case they supplement each other. (14 R. C. L. 771.)

We have yet to consider the exceptions to the admis-

sion of evidence. The argument made in support of the
exceptions to the admission of the evidence of experts
falls logically under two heads, first, that the case does
not present a proper subject-matter for expert testimony,
and, second, that the questions propounded to the experts
were not proper.

After showing the circumstances under which the acci-
dent occurred, including the dimensions of the wall and
the fact that a large portion of it fell in the opposite
direction from that intended by the defendant, the follow-
ing question which contains sufficient recitation of the
facts for the purpose of this discussion was propounded
to a witness who had qualified as an expert in the char-
acter of work being done by defendant:

"Q.  Assuming Mr. Young a wall between 35 and 40
feet in height, a brick and mortar wall, 50 feet or more in
length, 18 to 20 inch thickness, being the last remaining
wall of any remaining up of any size of a building that
stood at the junction of two streets, and this wall ran
along one of the streets and separated from the roadway
of that street by a sidewalk by about three feet wide, the
street being about 38 feet wide, and the other side of the
street from this wall being an open space in front of a
public building, assuming those facts and the desire and
intention of pulling down that wall, destroying it, in such
a manner and for the purpose and intention of pulling it
in to where the rest of the building stood, away from the
street, bearing those facts in mind and the intention and
purpose of the party removing the wall to pull it that
way, and not into the street, can you say from the fact
that when the wall was moved a large portion of the brick
and mortar composing the wall instead of falling in the
direction they wished and desired it fell into the street
and upon the street, can you say from that fact whether
or not the means taken to pull down and destroy that
wall were the proper means and methods such as a rea-
sonable and prudent man would use in order to secure
the demolition of the wall as he proposed by pulling it
inside?"

The defendant objected to this question on the grounds: That it embraces facts not testified to; that it lacks sufficient facts on which the witness can base an intelligent and expert opinion; that it calls for a conclusion of the witness; that the means by which this object was sought to be accomplished have not been given to the witness, whether there was one rope or fifty ropes or any guy wire; that the question is not a fair one and does not state the facts sufficiently; that it does not show what portion of the wall fell, if any, one way or the other, and that the question is unintelligible. The objections were made several times and are more or less disconnected but we think the above statement fairly states the substance of the grounds. The objection was overruled and the witness answered: "In my opinion the means employed were inadequate." Thereupon the following question was asked the same witness:

"Q. To secure the demolition of the building, of a wall, so as to meet the purpose and desire of having the wall fall inside where the balance of the razed building had stood, and not out upon the street or any portion of the brick wall, what would be the proper method that would be used by a reasonable and prudent person to secure the proper razing, the proper result, can you tell the jury?"

to which question the defendant objected on the ground that it called for a conclusion of the witness as to what was proper and what was not proper. The objection being overruled the witness answered that a proper method would involve the channeling of the wall near its base on the side toward which it was intended to fall, then to place a vertical timber on the outside of the wall, attaching a pulling mechanism to this timber and applying a pull. The witness then volunteered that he could illustrate this by a diagram, which he did, using the blackboard, but no reproduction of this diagram has been pre-

served as evidence.   The witness then stated that in addition to the rigging he had described by the sketch he would place barriers across the street and a man at each barrier with authority to stop people passing.   Thereupon the question was asked the same witness as follows:

"Q.    * * * I will ask him to state if he can from his experience and knowledge of these matters, what an ordinarily prudent man would do under the same circumstances and conditions?"

to which the defendant objected upon the ground that it involves a conclusion of law and that the witness cannot state what a reasonably prudent man would do under any circumstances;   that that is a question for the jury to determine on all the evidence;   and on the further ground that it calls for a legal conclusion, usurps the function of the jury as the answer would necessarily decide the main issue in the case and is something outside the functions of an expert.   The objection was overruled and the witness answered:   "In my opinion a man of ordinary prudence would follow out or should follow out the same general procedure and observe the precautions as I have said," whereupon he was asked the following question:

"Q.   Would it add to or detract from that opinion if I further supplement the question by saying that the time chosen for pulling down this wall was about four o'clock, and that that was the time in which a large number of government employees working in these public buildings at or near this spot quit work and were going home and many of them following the pathway which I have alluded to, and along Mililani street,—along the street on which this wall was facing?"

Defendant objected on the ground that it assumed facts not in evidence.   The plaintiff then amended the question by substituting "some employees" for "a large number of employees."   Defendant still objected on the ground that the question was vague and uncertain and could not possibly be answered by the witness for those

reasons. The objection was overruled and the witness answered: "In my opinion the fact that people were passing and repassing would necessitate extra precautions being taken to divert the people around the danger zone. The further question as follows was propounded to the same witness:

"Q.  Now I will ask you Mr. Young if the precautions which you have stated, as to precautions which you stated should be taken, in addition to the placing of those timbers on the outside of the wall, I would ask you if those precautions are proper precautions that should be taken under those circumstances?"
to which the defendant objected on the ground that it called for a conclusion of the witness and involved other facts which should be decided by the jury. The objection being overruled the witness answered: "Those are proper precautions that are taken by careful people in connection with work of this kind." To each of the rulings overruling his objections the defendant excepted.

Another expert was called and practically the same questions propounded to him as above set out, to all of which the defendant objected upon practically the same grounds. The objections being overruled the defendant excepted and the witness gave evidence substantially in accord with that above. These questions and answers will not be set out as what is said in regard to the above will apply with equal force to them.

We entertain no doubt that this case presents a proper subject-matter for expert testimony. The subject-matter under investigation—the proper method of pulling down a brick and mortar wall of the dimensions described in the first question so as to obtain the desired result of having it all fall in a given direction—is one upon which persons inexperienced in this character of work are likely to prove incapable of forming a correct judgment without

the assistance of expert advice.   In other words, the operation necessary to pull down such a wall so as to produce the desired result of having it all fall in a given direction calls for the exercise of such a degree of skill as to require a course of previous study or experience in order to attain a knowledge thereof.   Such a subject presents a case for the admission of opinions of men who have by study or experience become expert in the performance of such work.   2 Jones Ev. 896; *Hart* v. *H. R. Bridge Co.,* 84 N. Y. 56; *Stead* v. *Worcester,* 150 Mass. 241.

The objection that the question lacks sufficient facts upon which the witness can base an intelligent expert opinion because the means by which the object was sought to be accomplished were not given to the witness, is one upon which plausible argument can be based but is not sound under the circumstances of this case.   The question contained all of the essential facts theretofore testified to and the witness by expressing an opinion based on the facts assumed in the question in effect professed to be able upon the facts stated to form an opinion as to whether or not proper means for producing the desired result of having all of the wall fall in one direction had been used.   And then his answer to the first question, read in connection with the second question and his answer thereto, makes it clear that he was of the opinion, from the fact that a portion of the wall fell in the opposite direction from that desired, that its fall in this manner was caused, and could have been caused, only by a failure to employ the precautionary means described by him in answer to the second question.   Counsel for defendant urge that the question did not take into account inevitable accidents and latent defects in the wall which might have existed.   There was no evidence at that stage of the trial, or at any other stage for that matter, that the wall in question contained latent defects which might

have produced the result. There was therefore no obligation upon the plaintiff to have her hypothetical question contain any reference to such matters. If the witness had been of the opinion that inevitable accident or latent defects might account for the result which was obtained he could not have truthfully, and we must assume would not have, answered the question in the manner in which he did. It is not always improper, as counsel for defendant seem to think, to permit an expert to base his opinion as to whether or not the proper means of doing a certain piece of work were used merely upon the result that was accomplished. The work may be of such a nature that a failure to produce the desired result will convey to the mind of an expert proof that the ordinary and proper means were not employed. This is illustrated in *McCray* v. *G. H. & S. A. Ry. Co., supra,* where it was held to be error to refuse to permit a witness who had been in the service of railway companies for fourteen years in the capacities of brakeman, switchman and conductor, and knew the manner in which railroad irons are usually loaded on flat-cars and protected to keep them from falling off, to testify that if the rail in question had been loaded in such manner it could not have fallen off as it did. This would have been equivalent to testifying that the fact that the rail did fall off showed it was improperly loaded and secured. Another case where the witness did testify from the fact that a roof which was being raised with jack screws fell that it was not properly braced is *Barnowski* v. *Helson,* 15 L. R. A. (Mich.) 33, 37, though the question does not appear to have been raised in that case. But the appellate court held that the case should have been submitted to the jury upon this proof.

There is much respectable authority holding that an expert ought not to be permitted to state what is reasonable or prudent or what a reasonably prudent man would

do in a given case. See *Hill* v. *Portland & Rochester R. Co.,* 55 Me. 438; *Fordyce* v. *Edwards,* 44 S. W. 1034; *Dallas Electric Co.* v. *Mitchell,* 76 S. W. 935. On the other hand the contrary rule appears to have been recognized as early as 1824 by Chief Justice Abbott of King's Bench in *Malton* v. *Nesbit,* 1 Car. & P. 70, and is followed by numerous American authorities.

Mr. Wigmore in his work on evidence, Vol. 3, Sec. 1949, referring to the line of American decisions which excludes the opinion of a witness in respect to care, reasonableness, safety and the like, has this to say: "We may start, then, with the understanding that the rulings on this point in the United States are purely a modern excrescence upon the body of the common law due to the unhealthy influence of a form of principle with which our courts have drugged themselves for two generations past." And again in section 1951, dealing with the application of the principle relating to testimony as to safety, care, prudence, duty, skill, propriety of specific conduct, etc., the same author says: "In the application of the rule to testimony on the present topics will be found no questions of principle having any consequence or difficulty. The decision is apt to depend chiefly upon the court's general attitude—of favor or disfavor—towards the exclusion of the exclusionary rule. That the exclusionary rulings are a modern heterodoxy may easily be seen by noting that out of the many hundred rulings the dates of two or three only fall before 1850 and of less than a score before 1860. Though many courts refuse to be led aside into these quibbles, a great body of unfavorable rulings exists to tempt the bar to raise the question at every opportunity. Even the experienced casuist would be puzzled to demonstrate a consistency between these rulings in the same jurisdiction. On the whole the general impression produced on an unprejudiced reading of these rulings is that

an enormous mass of most useful testimony is daily excluded under their influence. The apparent purpose of the rule might have been supposed to be (by one unacquainted with our jurisprudence) to exclude testimony in proportion to its significance and directness and the wonder is how a jury can under the circumstances come to an intelligent conclusion without the aid of the banished testimony."

Abbott says that "A witness shown to be an expert may state his opinion. It is competent thus to prove what would have been the proper construction and mode of operation, the effect of a particular thing therein; what is or what is not prudent; whether a person of competent skill would have done what the witness testifies was done, or what is hypothetically put; and whether the casualty could have been avoided by proper care." 2 Abbott's Trial Ev. (3 ed.) 1536. See also *Territory* v. *Cotton Bros.*, 17 Haw. 618, 635; *Eastern Transportation Line* v. *Hope*, 95 U. S. 297; 11 R. C. L. 583.

We would be called upon to adopt one or the other of the divergent rules above referred to were it not for the fact that the counsel for appellant in their reply brief state that "assuming the necessity of expert evidence in the case at bar it would have been proper for an expert, after having the facts described to him, to testify what means an ordinarily prudent man would employ." But, they say, "without knowing the means employed he condemns them, whatever they were, and says that they were not what a prudent man would have employed because the wall buckled." In other words, counsel now concede the rule as contended for by plaintiff but maintain that the witness should not have been permitted to answer the question because sufficient facts were not placed before him to justify an answer. We have already held that the hypothetical questions contained all the essential facts

necessary to form the basis of expert testimony and hence we must conclude that it was not error to receive the answer of the expert.

Exceptions overruled.

*J. W. Cathcart* and *B. S. Ulrich* (*Thompson, Cathcart & Lewis* on the brief) for plaintiff.

*E. C. Peters* and *H. R. Hewitt* (*Peters & Smith* on the brief) for defendant.

### DISSENTING OPINION OF KEMP, J.

I am unable to agree with the majority in holding that there was no error in permitting Mr. Young to answer the question calling for his opinion as to "what an ordinarily prudent man would do under the same circumstances and conditions," but realizing that dissenting opinions are of very little value I content myself with setting forth my reasons very briefly.

In order to understand the full import of this question consideration must be given to some of the evidence that had gone before. The witness had stated that in addition to the mechanical means or rigging which he had described barriers should have been placed across the street and a man at each barrier with authority to stop people from passing. When the question under consideration was propounded counsel for defendant objected upon the grounds among others that the witness cannot state what a reasonably prudent man would do under any circumstances and that this is something outside of the functions of an expert. I am of the opinion that both of these objections should have been sustained. It is apparent that this question in addition to calling for the opinion of the witness as to what mechanical means or rigging an ordinarily prudent man would employ to pull down the wall called for his opinion as to what precautionary means an ordinarily prudent man would have

taken to warn people away from the danger zone. The matter of warning people away from the danger zone is so clearly outside the field of a civil engineer's or contractor's special knowledge that it seems to me the mere statement of the question would demonstrate the validity of the objection that it was outside the functions of an expert. It is unquestionably the general rule that jurors should reason and witnesses should not. In other words, as to matters of common knowledge a jury can, generally speaking, gain nothing of essential value from the judgment of witnesses, however experienced or skilled. Chamberlayne, Ev., Sec. 872. Whatever may be said of the right of a witness skilled in a given trade or profession to express an opinion as to what an ordinarily prudent man would do to carry out work which can be done only by one skilled in his trade or profession I feel sure that no authority can be found authorizing such a witness to express an opinion upon a matter entirely outside of his special knowledge. When this question was propounded, counsel for defendant, although objecting as above stated, admitted that the witness might state what he would have done under the circumstances. The court suggested to counsel for plaintiff that this would reach the same end, to which counsel at first assented and had the witness state what he himself would have done. But having secured this evidence counsel then insisted upon his original question and the witness was permitted to answer over the objections above set out. Counsel having agreed that the witness might state what he himself would have done I readily agree that if testimony as to what a reasonably prudent man would do under the circumstances is the same thing as testimony of what the witness would have done under the circumstances no prejudicial error was committed in receiving the evidence. Counsel for plaintiff evidently did not consider them identical for after the

witness had testified fully as to what methods should have been used and what he would have done both as to pulling down the wall and warning people in the vicinity away from the danger zone he insisted upon the witness being permitted to state what in his opinion a reasonably prudent man would have done under the circumstances.   It is true the witness answered the question by saying that "In my opinion a man of ordinary prudence would follow out or should follow out the same general procedure as I have said," thus indicating that he did not differentiate between the two.   He evidently reasoned that any departure from the means which he would have used would constitute conduct which a man of ordinary prudence would not indulge in.   But regardless of how the witness may have reasoned I think there is a vast difference in the nature of the two inquiries.   The average juror is as well qualified to form an opinion as to what an ordinarily prudent man would do in the way of warning people away from the danger zone as the witness and for that reason, if for no other, I think this evidence should have been  excluded.