JENNIE L. JOHNSON ET AL. V. GALVESTON, HOUSTON &
NORTHERN RAILWAY COMPANY.

Decided January 31, 1902.

**1.—Negligence—Pleading and Proof—Defective Railway Track.**

Where, in an action against a railway company for personal injury causing death and resulting from the derailment of a train, plaintiffs plead specially the cause of the derailment and the specific matters constituting negligence in relation thereto upon which they rely for recovery, they can not recover upon a ground of negligence and cause of derailment, such as a broken axle, which they have not alleged.

**2.—Charge—Contributing Cause—Railway Accident—Negligence.**

A charge will be considered in its entirety in determining the correctness of any given section thereof. See charge so construed and held to fully present the issue of liability in a case where a broken axle, not pleaded as a cause of the injury, might have been found the sole cause of the accident, or as having contributed thereto in connection with other causes pleaded as the facts constituting negligence.

**3.—Same—Cause of Death.**

Where plaintiff's evidence attributed the death exclusively to a gangrenous condition of deceased's bowels caused by the injury alleged, they could not complain of a charge that unless the death was due to a gangrenous condition and that such condition was due to the injury alleged, the verdict should be for defendant, because of its excluding the hypothesis of death from shock or from decedent's diseased condition having been aggravated by the injury.

Appeal from Harris.    Tried below before Hon. Wm. H. Wilson.

*Lovejoy, Sampson & Malevinsky* and *M. E. Kleberg,* for appellants.

*Baker, Botts, Baker & Lovett,* and *A. L. Jackson,* for appellee.

GILL, ASSOCIATE JUSTICE.—This suit was brought against the appellee by Mrs. Jennie L. Johnson for herself and as next friend of the minors, Vesta B., Octavia, and Virgil B. Johnson, to recover damages for the death of Byron Johnson, the husband of plaintiff and the father of the minors. Hebert Austin as next friend of Phyllis Johnson (a child of deceased by a former wife) joined in the suit. A trial by jury resulted in a verdict and judgment for defendant from which plaintiffs have prosecuted this appeal.

The petition of plaintiffs, after the necessary formal allegations, contained the following: "That on or about the 24th day of February, the plaintiff, Jennie L. Johnson, together with her husband, Byron Johnson, were passengers on one of the trains of the defendant company, traveling from Galveston to Houston, Texas; that at a point on defendant's line of railway known as Deep Water the train was derailed; that in said derailment the said Byron Johnson received injuries which resulted in his death. That the derailment was due to the negligence of the defendant, and that the death of the said Byron Johnson was directly and proximately caused and occasioned by the negligence and

carelessness of the defendant company, its servants, agents, and employes, in that:

"(a)     Said company, its servants, agents, and employes, negligently and carelessly maintained its line of railroad at the point of said derailment in a defective and unsafe condition, in that the ties supporting said rails were rotten and worn out; that the spikes holding the rails to the ties were loose, and the roadbed unballasted and out of repair to such an extent that the rails spread, all of which caused said derailment, as aforesaid.

"(b)     That the defendant, its servants, agents, and employes, negligently and carelessly ran and operated said train at a dangerous and excessive rate of speed, considering the unsafe and defective condition of its track and roadbed, in that said train of cars was running at the time at a rate of speed exceeding twenty-five miles per hour, and which, considering the defective and insufficient condition of the roadbed and track, was hazardous and dangerous."

The defendant interposed a general demurrer, and answered that it was not guilty of the wrongs and negligence charged against it.

The facts are as follows:     On the day alleged in the petition deceased with his wife and family took passage on one of defendant's passenger trains at Galveston, Texas, intending to go to Sour Lake.     Near a point called Deep Water, on defendant's line between Galveston and Houston, and while the train was traveling at a speed of between thirty and forty miles an hour, a large portion of the train was derailed and the entire train brought to a sudden and violent stop.     As a result of the derailment deceased was thrown against the corner of a seat and injured.     He died about ten days afterwards.     As to the extent of his injuries and whether they caused his death, the evidence was conflicting.     The evidence was also conflicting as to whether the derailment was due to any of the causes alleged in the petition and as to whether it was due to defendant's negligence in any respect.

From the evidence of those witnesses who testified with reference to the nature and causes of the accident we gather the following facts: The engine and tender did not leave the rails, and at the point where the engine and tender stopped the rails were in place and in proper alignment.     The rear trucks of the tender were missing from their place and the read end of the tender was in contact with the track. The rear trucks of the rear sleeping car did not leave the rails, and the rails under them and from thence south toward Galveston were in place and in alignment.     From the rear trucks of the rear sleeper to the point where the engine and tender stopped the track was badly torn up, the rails being spread and out of place, the ties torn up and broken, and all the intervening cars or coaches were off the track, the baggage car being entirely off the roadbed.     At a point on the track about sixty feet south of the rear end of the last sleeper a hole was found between the rails, and the ties at that point were damaged and pushed together under the rails.     Near this and to one side of the roadbed was found one of the

wheels and a part of the axle of the rear truck of the tender. The axle of the rear truck of the tender had evidently broken at or near that point. One of the wheels and the fragment of the axle had been pressed between the ties by the passing train, thus making the hole and jamming the ties together, and had then in some way been thrown out to one side. No part of the train was derailed at this point, but, as above stated, the rails remained in place and with sufficient strength to permit the passing of the entire train except the engine and tender, which had of course practically passed the point before the axle broke. The other tender wheel with its part of the broken axle fell under the cars and caused the derailment and destruction beyond that point.

There was testimony to the effect that some of the ties were rotten and that the roadbed was unballasted and in a bad state of repair, but as to these conditions and the extent to which the safety of the track was affected thereby the evidence was conflicting. Dickson, an expert, testified as to the proper manner of testing the strength of axles, and further stated that the breaking of an axle was an exceedingly rare accident. That out of 5,000,000 in use in the United States not over eight or nine a week were broken. He further testified that such breaks were not always due to defects in the axle, and that an axle was much more liable to break on an uneven and poorly ballasted track than on a firm, smooth track.

The court submitted the issues to the jury, but refused to allow a recovery should the derailment be found to be due to any other cause than one of those named in the pleadings of plaintiffs.

By the first assignment of error appellants assail the following portion of the court's charge: "If you believe such broken axle was the sole cause of the accident you will find for defendant." It is contended that this portion of the charge is error, (1) because it ignores the derailment, which itself raised a presumption of negligence; (2) the charge excused the defendant, notwithstanding the broken axle might have been due to the negligence of defendant; and (3) because it was a charge on the weight of the evidence.

The point thus presented was also raised by a requested charge to the effect that if the jury believed the derailment was due to the negligence of the company and proximately caused the death of deceased they would find for plaintiff, which charge the court refused to give.

Appellants contend that notwithstanding they pleaded specially the causes of the derailment and the specific negligence on which they rely for recovery, they should not be confined to those allegations. That having shown the derailment and the resulting injury, negligence would be presumed unless the appellee rebutted the presumption by proof that it was not at fault as to any efficient cause of the wreck.

One phase of the assignment presents a question of pleading, and this we will determine first. It is a general and well established rule that when one having a right to rely upon general allegations for the admission of his proof chooses to plead specially the facts upon which he re-

lies for recovery, he must confine his proof to the facts alleged and can recover upon no other ground. Railway v. Hennesey, 75 Texas, 155; Railway v. Herring, 36 S. W. Rep., 129; Railway v. Vance, 41 S. W. Rep., 167; Railway v. Scott, 27 S. W. Rep., 827; Railway v. Young, 10 Texas Civ. App., 145.

This general rule has been applied in this State almost without exception. Notably in actions of trespass to try title, where, under a general allegation of ownership and ouster, the plaintiff may prove such title as he has, yet if he pleads his title specially he is confined in his proof to the title pleaded. That the rule is applicable to every character of action for damages save such as the one under consideration is, not questioned by appellants. What then is the feature present in suits, by passengers for damages resulting from derailment of passenger trains, which render inapplicable this wholesome and well established rule?

The purpose of pleading is to apprise opposing parties of the exact grounds of complaint against them, so that they may prepare to meet the issues thus made. The plaintiffs in this case had the right under the law to allege generally the fact of the derailment and charge it in a general way to the negligence of the company without specifying the respects in which the company had been negligent. Had this been the state of the pleading the railway company, with knowledge that a more specific statement of the cause of action could not be required, must have come to the trial prepared to affirmatively acquit itself of any fault or blame to which the derailment might be attributable. Such a state of pleading would have been equivalent to notice that this would be required. The right to stand upon general allegations is accorded to plaintiffs in cases of this sort because the facts are usually within the knowledge of the defendant, and beyond the reach of plaintiffs.

The fact of the derailment, a happening out of the usual course of things, raises the presumption of a fault somewhere. The road and its equipment are in the hands of the company and suspicion points in that direction. But here the plaintiffs have swept aside the reasons upon which their right is based. They have assumed to be in possession of the facts. They have charged specifically and minutely the causes of the derailment and the respects in which the railway company has been derelict in its duty.

What was the natural and obvious effect of this specific pleading upon those having the company's affairs in charge? They would prepare to meet the specific charges made. They would prepare to contest the case upon the battleground chosen by the plaintiffs themselves. If the plaintiffs were met and overthrown upon the issues thus made, should they be permitted to shift to some other issue developed upon the trial and not earlier, and which the defendant was not called upon to prepare for? Suppose the plaintiffs, standing upon their rights, had pleaded generally or had included a specific charge that appellee had negligently used a defective axle which alone or in connection with the other causes alleged was responsible for the derailment. The company might have called

as witnesses the manufacturers of the wheels and axles and have shown that the axle was free from defects and had withstood the most approved tests, or that if defective the defect was of such a nature as would not have been disclosed by the exercise of the utmost care. Appellee may have been able in many ways to acquit itself of the charge of negligence as to the axle. The right of appellee to make the effort to protect itself upon this point can not be successfully questioned, and since the issue was not tendered, but other issues distinctly relied on, it would be un-, fair to predicate liability thereon. But even if we were inclined to hold otherwise, we regard the case of Railway v. Summers, 43 Southwestern Reporter, 1107, as authority for the doctrine contended for by appellee and followed by the trial court.

Appellants assail as pure dicta the expressions in the opinion in the case cited in so far as they bear upon the point at issue. If they have not the dignity of express authority, they approach it so nearly as to indicate clearly the views held by our Supreme Court upon the question. In the case cited the plaintiff, complaining of a passenger derailment, alleged that it was due to certain specific causes, among them the fact that the rails were of unequal height where they were joined together. This allegation was not sustained, but the proof showed instead that the rails were not in proper alignment, the edge of one of the rails extending to one side forming a lip or shoulder at the point of junction, and that this defect caused the wreck. The point was made that the proof was variant from the allegations and the recovery on that ground ought not to be permitted to stand. The Court of Civil Appeals recognized as applicable the general rule that the proof must conform to the pleadings, but held that the variance was not material. The Supreme Court granted a writ of error on the ground that the Court of Civil Appeals had erred in holding that there was no material variance, but afterwards affirmed the judgment, having found on a closer inspection of the pleadings that they contained other specific allegations which covered the particular defect proved. Railway v. Summers, 92 Texas, 621.

Had the supreme court regarded the case as an exception to the general rule of pleading it is not probable they would have made search for an appropriate allegation as a reason for upholding the judgment. In so far as the question of pleading is involved the assignment is without merit.

The question of evidence involved in this assignment was presented with much force in oral argument, and in view of the peculiar state of the facts more seriously threatens the validity of the judgment than any other question made on this appeal. The point is this: If the axle was sound and the appellee was without fault in using it as a part of the equipment of the train, yet if it was broken as a result of a yielding, uneven, and unballasted track and roadbed, or by reason of the high rate of speed, or if the breaking was due to both these causes, and if the company was negligent in so maintaining its track and roadbed, or in running the train at a hight rate of speed, the company would be

liable even though the derailment would not have occurred but for the broken axle. In this view of the case the portion of the charge complained of, if considered alone and without reference to the charge in its entirety, would be erroneous, or at least misleading. But the court, in the part of his charge preceding the part complained of, instructed the jury that if they believed from the evidence that the unballasted and unrepaired track or excessive speed caused the accident they should find for plaintiffs though it should also appear that the broken axle contributed to cause the accident. Thus the court left it to the jury to say whether the matters complained of in the petition caused the accident, and this included the breaking of the axle, as a result of an unrepaired track and excessive speed. A recovery was allowed if the broken axle, whether due to its own defects or the other conditions above named, contributed to cause the derailment. We are of opinion the charge considered in its entirety fully presented the issue of liability, and the assignment is without merit.

It is further contended that the part of the charge in question was upon the weight of the evidence in that it denied to plaintiffs the weight of the accident itself as an evidential fact tending to support the allegations of negligence. It certainly can not be maintained that the charge by express terms excluded from the consideration of the jury the accident itself. They might consider the accident as tending to establish the existence of the negligent conditions complained of without running counter to any expression in the charge. While the fact of the accident might be considered as tending to establish negligence generally, the plaintiffs, by reason of the form of their pleadings, had abandoned the right to use it except in so far as it might aid in establishing the negligence alleged. The plaintiffs' theory of the accident was met and overthrown by proof adduced by the defendant. The jury have so found upon adequate evidence. When the true cause of the derailment was shown to be other than those alleged, the accident itself lost all its evidential force in so far as it might be relied on in support of plaintiffs' allegations. It was still evidence tending to show negligence on the part of the defendant, but of negligence as to matters which could not form the basis of a judgment in favor of plaintiffs.

In a special charge asked by the plaintiffs the court was requested to impose on them the burden of showing by a preponderance of the evidence the facts entitling them to recover. Another portion of the charge is complained of because the court in reciting the facts averred by plaintiffs as a basis for recovery failed to mention spreading rails and loose spikes.

There is no evidence of loose spikes at the point where the axle broke or that the rails spread at that point. It is undisputed that at and near that point and up to where the last sleeper stood after the accident, the rails retained their position and alignment notwithstanding the tremendous strain resulting from the broken axle and its immediate consequences. This would seem to be a sufficient answer to this assignment.

But this further reply naturally suggests itself: If it be conceded that there was evidence of spreading rails and loose spikes, these could be no more than the results of the decayed condition of the ties and were included by inference in the expression, "if you believe from the evidence that defendant's roadbed had in it rotten ties or that the roadbed was unballasted and out of repair," etc. The other objections to this portion of the charge have been disposed of in a former part of this opinion.

The action of the court in giving special charge number 3 requested by defendant is assigned as error. In it the jury are charged that unless they believe the death of Byron Johnson was due to a gangrenous condition, and that such condition was due to an injury received in the derailment, they should find for defendant.

The objection urged against this charge is that it eliminated from the consideration of the jury the question of shock as the concurrent cause of the death, and also debarred plaintiffs from recovery if he was diseased and if his condition was aggravated by the injuries received in the wreck. The evidence for the plaintiff without conflict or difference of opinion attributed the death to a gangrenous condition of the bowels caused by an injury. The language of one of the physicians who performed the autopsy was: "His death was due to sepsis superinduced by profound shock due to traumatism. Sepsis is acute blood poisoning." Another physician testified for plaintiff: "His death was due to surgical shock and acute sepsis as a result of this injury or gangrenous bowel." It thus appears that there is scarcely a shade of difference in the opinion of the two physicians, and they both attribute his death to the gangrenous bowel and attribute that to the injury. The physicians who testify for defendant say his death was due to causes independent of the accident. We do not think the jury could have possibly been misled. The second objection is without merit, because the court gave a special charge covering the point complained of.

De do not deem it necessary to notice the remaining assignments of error in detail. We regard them as untenable. The verdict of the jury finds sufficient support in the evidence, and no reversible error being displosed by the record the judgment is affirmed.

                                                    *Affirmed.*

Writ of error refused.