## TEXAS–LOUISIANA POWER CO. v. DANIELS.

### No. 11141.

Court of Civil Appeals of Texas. Dallas.

April 22, 1933.

Rehearing Denied May 27, 1933.

Jas. D. Buster, of Sherman, and Leachman & Gardere, of Dallas, for appellant.

Hubert Bookout and Randell & Randell, all of Sherman, for appellee.

LOONEY, Justice.

About 11 o'clock at night, May 13, 1929, Doc Franklin Webster, Tom Webster, brothers, and Bowen Daniels, Doc's brother-in-law, were killed about three miles south of Bells, in Grayson county, by coming in contact with the power line of the Texas-Louisiana Power Company, at a place where it was broken down by a stroke of lightning about 6 o'clock a. m. the same day. Mrs. N. E. Daniels, mother of Bowen, sued and recovered judgment against the power company, for $7,500 damages, on the theory that the company's negligence caused the death of her son.

The issues framed by pleadings, the facts developed at the trial, the rulings of the trial court on charges and evidence, and the assignments and propositions urged for reversal, are substantially the same as were presented in the case of Texas-Louisiana Power Co. v. R. B. Webster et al., 59 S.W. (2d) 902, appealed to this court by the power company, from an adverse judgment rendered in favor of the father, mother, widow, and a posthumous daughter of Doc Webster, for damages resulting from his death. We refer to the record of that case for a full statement of the issues, facts, except as noted later, the discussion and holdings of the questions raised, and the authorities cited.

As was held in that case, so we hold, that deceased was not a trespasser, as to appellant, and that the doctrine applicable to that relationship has no application here. We overrule assignments in which appellant contends that the death of Bowen Daniels was the proximate result of an act of God, or that it was due to an unavoidable accident. We also overrule assignments complaining of the exclusion of evidence offered to show that deceased and his companions entered the premises for an illegal purpose. The law controlling appellant's conduct is designed to protect saint and sinner alike, and the evi-

dence offered could have had no other effect than to unduly prejudice the jury against plaintiff. We also overrule the contention of appellant urged to propositions Nos. 32 and 34, to the effect, that the court erred in refusing to define certain clauses employed in its charge; also the contention urged in proposition No. 33, that the court erred in failing to instruct the jury that there might be more than one proximate cause. These questions were discussed in the Webster Case and our reasons given for the ruling stated.

Appellant alleged specific acts of deceased, as constituting contributory negligence, as follows: In entering upon the premises at night, being unfamiliar with their arrangement, condition, and the location of things that might cause injury; in failing to carry a light or lantern to illumine the path over which he was walking; in entering for the purpose of committing unlawful acts, viz. burglary and theft; in entering without the knowledge, consent, permission, or sanction of the owner of the premises, or the occupant thereof, and without invitation or allurement; in entering without requesting a guide to accompany him; and that, in leaving the premises, deceased chose a different route to that over which he had entered, neither of which was familiar to him.

The court submitted the issue of contributory negligence, in general terms, which was found for plaintiff, to which appellant objected because of its generality, and in addition requested the submission of issues presenting the different phases, as pleaded, all of which were refused.

■ If the evidence raised the issue of contributory negligence, we think the court committed reversible error in refusing these charges, but we do not think the issue was raised at all. It is undisputed that deceased and companions were total strangers to the community, were ignorant of the condition of the power line, or even of its existence at the place where the deaths occurred; consequently, were entirely ignorant of the danger attendant upon entering, and passing over the cotton field.

■■ Contributory negligence can only be predicated upon a failure to use reasonable care for one's own safety to avoid the thing that caused injury. If one is ignorant of the danger and is not required to anticipate its presence, as in the instant case, no duty exists to exercise such care; for this reason, we do not think the issue of contributory negligence is in the case.

The decisive question is, Was appellant guilty of actionable negligence? and the material propositions urged for reversal, are based upon the refusal of requested issues relating to that question. Appellant assigns error on the refusal to give requested issues Nos. 12 and 17, as follows: "Special Issue No. 12: Find from a preponderance of the evidence whether or not the defendant had any knowledge that its transmission line was low and near the ground at the place where Bowen Daniels sustained his injuries prior to the time that such injuries were sustained? Answer 'yes' or 'no.'" Special issue No. 17 reads: "Find from a preponderance of the evidence whether or not the defendant knew, or by the exercise of ordinary care should have known, that its transmission line was low and near the ground prior to the time Bowen Daniels came in contact therewith? Answer 'yes' or 'no.'"

In answer to issues submitted in the general charge, the jury found that appellant was guilty of actionable negligence, in the following respects: In permitting its wires to remain low and near the ground; in failing to have a watchman at the time and place to prevent any one from coming in contact with the low-hanging wires; in keeping its wires charged with a powerful current of electricity while the same were hanging near the ground. These findings necessarily comprehend the further and incidental fact that appellant knew of the condition of its power line prior to the death of these parties, or by the exercise of reasonable care, should have known; in other words, the requested issues presented material inquiries, and, unless their refusal became immaterial, by reason of other matters, reversible error is shown.

■ If appellant had actual knowledge of the damaged condition of its power line, in time, by the exercise of reasonable care, to have remedied the defect, or otherwise prevented the tragedy, the inquiry whether by the exercise of reasonable care it could or should have ascertained such condition becomes immaterial. But, if actual knowledge existed, it was received through George Ferguson, appellant's alleged agent at Bells. The evidence is conflicting as to his agency, but, as this incidental issue was neither submitted in the general charge, nor requested by either party, we must assume, in support of the judgment, that the trial court found, from conflicting evidence, that Ferguson was in fact appellant's agent, and, the evidence being undisputed that he was notified by Childress, the rural mail carrier, about 10 o'clock Monday morning, of the dangerous condition of the power line, actual knowledge was thus established. So, in view of this situation, the refusal of requested issue No. 12, even if error, was harmless; and the further inquiry, whether or not, by the exercise of reasonable care, appellant could or should have discovered the dangerous condition of its power line, became immaterial; besides, we fail to find in the record any evidence tending to show that appellant exercised care to ascertain the damaged condition of its line prior to the tragedy.

But aside from these considerations, we are of opinion that the findings of negligence against appellant were justified by pleading and proof, under the doctrine of res ipsa loquitur. Appellant was required by statute (Rev. St. 1925, art. 1436) to maintain its line twenty-two feet above the surface of the ground; its duty was also to exercise reasonable care to inspect and remedy dangerous conditions in its line, 16 Tex. Jur. p. 241, § 10; Jacksonville Ice & Electric Co. v. Moses, 63 Tex. Civ. App. 496, 134 S. W. 379 (writ denied); Arkansas, etc., Co. v. Adcock, 184 Ark. 614, 43 S.W.(2d) 753, and the evidence is that a severe electrical storm prevailed over that section early Monday morning, and that, in the vicinity where lightning struck the power line the storm was of unusual severity. The provision of the statute above mentioned (article 1436) was enacted for the protection of all persons, creatures, and property rightfully passing under a power line, and, on the showing made that, appellant's wires were permitted to swing near the surface of the ground for eighteen hours, the dangerous condition being easily discernible with the naked eye for at least half a mile, we think, a presumption of negligence arose, casting upon appellant the burden of showing that, notwithstanding these conditions, it had exercised reasonable care in the premises; this presumption appellant wholly failed to rebut. Shawnee L. & P. Co. v. Sears, 21 Okl. 13, 95 P. 449, 455, 456, Delahunt v. United T. & T. Co., 215 Pa. 241, 64 A. 515, 517, 114 Am. St. Rep. 958. The doctrine of res ipsa loquitur is satisfactorily stated in the following, taken from 7 Words and Phrases, First Series, 6139: "The most apt and concise statement of the principle of res ipsa loquitur is found in the leading case of Scott v. London & St. Katherine Docks Co., 3 Hurl. & C. 596, where the plaintiff sued for personal injuries, and the court held there must be reasonable evidence of negligence, but, where the thing is shown to be under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from want of care. Chenall v. Palmer Brick Co., 117 Ga. 106, 43 S. E. 443, 445 (citing Waterhouse v. Schlitz Brewing Co., 12 S. D. 397, 81 N. W. 725, 48 L. R. A. 157)."

Appellant does not contend that the amount of damages found by the jury is excessive, or that the verdict is not sustained by evidence, but does say that the court erred in overruling its objection to issue No. 10 on the measure of damages, because not authorized by evidence. We overrule this contention; the issue, in our judgment, was justified by evidence and properly submitted.

We have carefully examined all assignments of error and propositions urged, and,

finding no reversible error, the judgment of the court below is affirmed.

Affirmed.

BOND, Justice (dissenting).

Appellee suffered the damages sought against appellant for the death of her son, Bowen Daniels, in consequence of his own negligence and his unauthorized act of intruding on premises on which he had no lawful business, and due to no fault of appellant, either statutory or in common law. The majority of the court, in this and in the Webster Case, extends the liability of an industrial and utility plant further, and exacts of it greater duties and responsibilities to a wrongdoer trespasser, or even to a licensee, than any case heretofore sanctioned by any court in this state, so far as I am able to find, and further than I can consent to go.

The condition of the line was due to an act of Providence—a stroke of lightning. Appellant did not know of its condition, had no notice of the electrical disturbance, and was not put to an election to inspect its line or place guards and watchmen in the cotton field, under the circumstances, to avoid the consequence incident to the acts of a negligent wrongdoer. Deceased and companions left their light-equipped automobile in darkness, went across the inclosed premises of another, into a tenant's barn, took property therefrom under circumstances of theft, stealthily left the barn in an opposite direction, to avoid detection, and were killed. They were not entitled to the protection of the owner or occupier of the premises, or of appellant, who had a vested right therein under a contractual easement or right of way. My conclusions reached in the Webster Case are applicable here, and fortified by disclosures in this record, that appellant had no notice of the condition of the line, was not put to an election to inspect or place a watchman to guard against danger, and that George Ferguson was not appellant's agent.

The record reveals that, on a Monday morning about 7 o'clock, a bolt of lightning struck appellant's electrical line. Some of the witnesses characterized the disturbance as a severe electrical storm; others as a single bolt of lightning. It is undisputed that the storm was local, discernible only by those in the immediate vicinity of the damaged transmission line. It was not known at Bells or Whitewright. Nothing is disclosed in the record to justify a conclusion that the company had notice of the destructive element or the injury done to its line, until after the accident, which occurred about 11 o'clock in the evening of the same day. The Sunday and Sunday night preceding the accident, and the Monday and Monday night of the accident, were cloudy and rainy; the cotton field in question was situated in a black land country; roads in the vicinity were almost impas-

sable, and travel was made on horseback on account of the rain and mud. Under such circumstances, can it be concluded that there existed the duty and responsibility of the electrical transmission company to foresee that of which it was ignorant, and to avoid the consequences of the acts of a negligent wrongdoer by failing to anticipate the presence of danger? Brought down to the fundamental fact, "that negligence can only be constituted by the failure to discharge a duty," the writer cannot see how any recovery can be sustained against appellant for the death of Bowen Daniels.

The undisputed testimony is that deceased and his two companions were trespassers to whom appellant owed no duty, save and except to not willfully injure them, and to refrain from doing that which would be tantamount to a willful injury. There is no contention made that any permission, express or implied, was given the men to enter the inclosure, or that there was a path or roadway across the field to indicate a possible right of license for one to enter the inclosed premises. Frog Jackson was the occupier of the premises at the time; his home was visible from the point where deceased's automobile was stranded in the road; deceased and his companions turned out the automobile lights, took an oil can to get gasoline, and in the dark went across a lane, through two wire fences into the edge of the cotton field, up the edge of the field toward Frog Jackson's home, and into his barn, and then left the barn by a different route in a direction away from the house, to the place where the bodies were found, and the oil can was found near the bodies.

Appellant pleaded that the three men went on a joint enterprise to steal gasoline from the owner or occupier of the premises, and were guilty of contributory negligence in entering upon the premises and in failing to carry a light, which was done for the purpose of theft, without the knowledge, consent, invitation, or sanction of the owner or occupier of the premises, and that they went without requesting a guide, and in leaving the barn chose a route in a direction opposite from the occupier's home. The reason for such actions is evident; i. e., they were taking that to which they had no right. In an effort to sustain the specific acts of contributory negligence alleged, appellant offered to show, by testimony of witnesses, that Frog Jackson, tenant and owner of an automobile in the barn, was at home on the night in question; that deceased and his companions did not come to his house and did not make inquiry for gasoline; that the plugs in the automobile tank and crank case had been removed and were lying on the ground; that all oil and gasoline had been taken; and that an oil can, containing a mixture of gasoline and oil, was found near the bodies. Appellant was denied the right to prove these facts or to have the jury pass upon requested submitted special issues presenting the different phases of contributory negligence.

The record discloses that the witnesses Frog Jackson, a Mr. Bailey, and Tom Wells, each lived in view of the transmission line, at the point where the lightning struck the pole; that Frog Jackson's home was visible from the deceased's automobile. Frog Jackson, as did Mr. Bailey and Mr. Wells, knew that lightning had struck the pole and that the wires were down, and had deceased secured permission to invade the premises, rather than go stealthily in the darkness, his death, and that of his companions, could have been prevented; or, had deceased carried a light or lantern to illumine his pathway, he could have detected the danger and thus avoided the injury. His failure to exercise such care for his own safety is, in the opinion of the writer, contributory negligence; at least, they are matters for the determination of a jury. He may have been ignorant of the danger attendant upon entering and passing over the cotton field, but, if by the exercise of care of an ordinarily prudent person deceased could have known of the condition of the line, and notwithstanding that proceeded to activate the danger by traversing a route which led directly into the damaged line, which was known to those who could have imparted knowledge of same, he should not escape the consequences of his own negligence.

Appellant was deprived of his defense, both in proof and by the court's refusal to give its pertinent submitted issues on contributory negligence, which the writer concludes was error, and amounts to disallowing appellant's day in court.

Appellant is entitled to have the alleged specific acts of contributory negligence, on the part of deceased, which are raised by the evidence, submitted to the jury as a defense. The adjudication of appellee's alleged negligent acts of appellant does not dispose of appellant's requested issues on contributory negligence.

Appellant sought to have the jury to determine the issue as to whether the company had notice of the sagging transmission line, and submitted appropriate special issues bearing on appellant's knowledge that the line was low at the place where Bowen Daniels sustained his injuries. The requested issues are embodied in the majority opinion. There is no evidence disclosed in the record, as the writer interprets it, authorizing the submission of an issue of notice of the condition of the line, as having been visited upon appellant, or that notice to George Ferguson, appellant's alleged agent at Bells, was notice to the company.

The record discloses that George Ferguson was the agent of the Texas Power & Light Company at Bells, and not an agent of appel-

lant; Clyde Craig testified that he, as local manager of the Texas-Louisiana Power Company at the time in question, employed all workmen for appellant at Bells and Whitewright; that George Ferguson was not in the employ of appellant, but was an employee of the Texas Power & Light Company. H. O. Green testified that he, as the division engineer in charge of the Texas Power & Light Company's transmission lines and substations in Grayson county, knew that George Ferguson worked for the Texas Power & Light Company at the time in question, and not for appellant. This positive testimony, as to the agency of George Ferguson, is uncontradicted by competent and probative testimony. Appellee offered testimony by a Mr. Childress that George Ferguson was informed by him of the condition of the line; he further testified that he did not know whether Ferguson worked for appellant or for the Texas Power & Light Company. There is no positive testimony that Ferguson was doing work for appellant. The record reveals that, prior to appellant's acquisition of the distributing electrical system at Bells, George Ferguson was employed by other electrical companies then engaged in that village, and that he was the only one there who knew anything about electrical appurtenances; thus complaint was made to him and he either adjusted it or called Whitewright, from which the electricity in Bells was transmitted. If such indirect testimony of agency or notice given by Childress to George Ferguson raises an issue of notice to the company, contraire to the positive testimony of said managing officers that Mr. Ferguson was not appellant's agent, then appellant was deprived of its right to have its affirmative defense submitted, as requested in said special issues. Where there is evidence to sustain such finding, and request is made, as here, that the issue of notice be submitted, it is error for the trial court to refuse the requested charges.

The theme of the entire record is that appellee's suit is one based on specific acts of negligence. The proof is evident that the condition of its line, causing Bowen Daniel's death, was due to a cause beyond appellant's control; appellant had no notice of its condition, and, under the attending circumstances, it was not put to the task of inspection, or of putting a watchman to guard against the unusual, unexpected, and unanticipated occurrence. There can be no presumption of negligence casting upon appellant the burden to extricate itself by showing that it exercised reasonable care. In my judgment, the

doctrine of res ipsa loquitur, has no application to the facts in this record. The authorities recited in the writer's dissenting opinion in the Webster Case, against this appellant, are applicable here.

There is no other conclusion that I can reach in this case than that the judgment of the lower court should be reversed and here rendered for appellant. Thus believing, I respectfully dissent from the majority holding.

### On Motion for Rehearing.

LOONEY, Justice.

In our original opinion, after discussing other matters, we said: "But aside from these considerations, we are of opinion that the findings of negligence against appellant were justified by pleading and proof, under the doctrine of res ipsa loquitur," and, in this connection, we stated facts proven in response to allegations that, unexplained, we thought justified an inference of negligence.

Appellant, in its motion for rehearing, takes the position that the doctrine of res ipsa loquitur is not applicable, for the reason that plaintiff alleged specific acts of negligence on the part of defendant, contending that it has been generally held by the courts of this state that the doctrine cannot be invoked where plaintiff has alleged specific acts of negligence on the part of defendant.

We do not understand that it is ever necessary for a plaintiff to indicate that he intends to rely upon the doctrine of res ipsa loquitur, as it is simply a rule of evidence justifying an inference of negligence as the cause of an accident, where the thing causing the same is shown to be under the management of a defendant, and the accident is of such a nature as in the due and ordinary course of things would not happen if those having the management used proper care; such a situation, unexplained, justifies a jury in presuming negligence, or, in other words, the situation affords reasonable evidence of negligence.

We do not think it necessary to invoke the doctrine of res ipsa loquitur to sustain the judgment; this idea is fully developed in our original opinion, but we see no reason why, under the facts as alleged and proven, the unexplained situation did not properly invoke the doctrine.

We have examined and duly considered all assignments urged in the motion for rehearing, but, finding no good reason for disturbing our decision, the motion is overruled.