**TEXAS & N. O. R. CO. v. BEARD.**

**No. 2867.**

Court of Civil Appeals of Texas. Beaumont.

Jan. 29, 1936.

Rehearing Denied March 11, 1936.

H. M. Kinard, of Orange, and Duff & Cecil, of Beaumont, for plaintiff in error.

O. M. Lord and Geo. E. Holland, both of Beaumont, for defendant in error.

WALKER, Chief Justice.

This appeal is by writ of error, but the parties will be referred to as appellant, Texas & New Orleans Railroad Company, and appellee, Tulu Beard. The action was by appellee against appellant for damages for personal injuries, caused by a collision of a Ford car in which she and two boys were riding with one of appellant's freight trains, at its Fourth street crossing in Beaumont. Her injuries were of a most serious nature, for which the jury allowed $1,000, with $500 additional for doctor bills, etc. The following were the only issues of negligence submitted by the court's charge, answered as indicated:

"Question No. 2

"Do you find from a preponderance of the evidence that the defendant, its agents, servants and employes, on the night of September 9, 1934, failed to place and maintain a flagman, light, bell or other warning in the vicinity of its railroad crossing on Fourth Street in the city of Beaumont, and far enough south of said crossing so that a person riding in an automobile, traveling north toward said crossing while using ordinary care in riding in said automobile and keeping a proper lookout for her own safety, could have seen such flagman, light, bell or other warning, if same had been so placed and maintained, in time to have avoided said automobile striking a train of cars across and upon said crossing?" Answer: "Yes."

"Question No. 3

"Do you find from a preponderance of the evidence that such failure (if any) to so place and maintain such flagman, light, bell or other warning constitute negligence on the part of the defendant, its agents, servants and employes, according to the definition of negligence given you in this charge?" Answer: "Yes."

"Question No. 4

"Do you find from a preponderance of the evidence that such negligence (if any) was the proximate cause (as that term has been explained to you) of the injuries (if any) sustained by plaintiff?" Answer: "Yes."

The appeal is from the judgment of the lower court entered in appellee's favor on the jury's verdict. On oral argument appellant waived all assignments of error except the assignment together with its proposition that, on the undisputed testimony, the judgment of the lower court should be reversed, with rendition of judgment in its favor.

On that proposition the following are the undisputed facts: Appellant's railroad crosses Fourth street at right angles, on the western side of the city of Beaumont. This is a paved street and is perfectly straight for several hundred feet on both sides of the railroad track, with nothing whatever to obstruct the view of the crossing. At the crossing the track is elevated 3 feet above the general street level. Beginning back a proper distance, the street is built up to a level with the railroad track at the crossing.

The collision occurred about 12:25 a. m. on the 9th day of September, 1934. Appellant's freight train, 94 cars long, was slowly passing over the Fourth street crossing, moving 3 or 4 miles per hour, a speed so slow that, without stopping, it took at least 30 minutes to clear the crossing. The automobile in which appellee was riding ran head on into the twenty-eighth boxcar back from the engine. As a result of the collision she suffered the serious and permanent injuries sued for.

Appellant pleaded many issues of contributory negligence against appellee, but they were all found by the jury in her favor, and no complaint is before us against these findings; hence it would serve no useful purpose to detail the circumstances immediately preceding the collision.

Under appellant's proposition, we are concerned with the evidence only to the extent of determining whether or not there was raised against it any issue of negligence together with the issue of proximate cause.

It was without dispute that appellant had no flagman, light, bell, or other warning, except the statutory sign "Railroad Crossing," where its track crosses Fourth street, or in the "vicinity" of its track, as found by the jury; in other words, there was no controversy on the issues submitted by question No. 2. But the evidence was insufficient to raise the issue of negligence submitted by question No. 3 and the issue of proximate cause submitted by question No. 4.

 Appellant's common-law duty to maintain a "light, bell or other warning" at the Fourth street crossing was measured by the following proposition of law (52 C.J. 201, § 1790): "A railroad company is ordinarily not negligent in failing to maintain an automatic alarm, in the absence of statutory requirement, when the crossing is not more than ordinarily hazardous."

The common-law duty to maintain a flagman at that crossing was measured by the following proposition (52 C.J. 203, 204, § 1792): "Before a jury will be warranted in saying, in the absence of any statutory direction to that effect, that a railroad company should keep a flagman or gates at a crossing, it must be first shown that such crossing is more than ordinarily hazardous, as, for instance, that it is in a thickly populated town or city, that the view of the track is obstructed either by the company itself, or by other objects proper in themselves, or by the configuration of the land, or that the crossing is one which, for any reason, a reasonably prudent person in the exercise of ordinary care could not use with safety, that the crossing is a much traveled one and the noise of approaching trains is rendered indistinct and the ordinary signals difficult to be heard by reason of bustle and confusion incident to railroad or other business, or by reason of some other such cause."

The testimony on these issues went no further than to show a paved street crossed by appellant's track at right angles, with the track slightly elevated, the street extending straight several hundred feet on both sides of the track, with the crossing in no way obscured. There was no testimony that this street was in a "settled" section of the city; nor that it was much-traveled; nor was there any showing that the crossing was extradangerous or more than ordinarily hazardous. On this statement the verdict of the jury convicting appellant of negligence was wholly without support.

On authority of T. & N. O. Ry. Co. v. Stratton (Tex.Civ.App.) 74 S.W.(2d) 741, and Wichita Valley Ry. Co. v. Fite (Tex. Civ.App.) 78 S.W.(2d) 714, we find nothing in the record to support the finding on the issue of proximate cause. There was no pleading or proof that appellant was under the duty to maintain two flagmen at this crossing, one on each side of its track; if only one flagman was required, there was neither pleading nor proof that he should have been on appellee's side of the track; the same criticism must be made against the failure to maintain bells, lights, or other warning device. There is nothing in the record to raise the issue that, since appellee and her companions did not see the train which occupied the railroad crossing in time to avoid the accident, a flagman or any other warning device would have given them notice of their danger in time to avoid the collision.

Counsel for appellee knew the character of proof required to invoke against the railroad company the common-law duty to maintain a flagman, bell, light, or other warning device at a railroad crossing. As these able lawyers offered no testimony whatever on that issue—that the crossing was extrahazardous or more than ordinarily dangerous—there is no ground for a reasonable presumption on our part that they could offer such testimony on another trial.

Appellee pleaded other acts of negligence against appellant which were not submitted to the jury, nor was their submission requested, for the obvious reason that they were not raised by the testimony.

She suggests in her brief that the elevation of the track, the distance between the track, and the bottom of the freight car, gave the illusion of an open way; that one driving towards the crossing could see under the freight car, down the street on the other side. This circumstance was not an affirmative act of negligence against appellant, but was available to appellee on

her defense to the issue of contributory negligence, which, as stated above, was found by the jury in her favor. These physical facts, if available on the issue that the Fourth street crossing was extra-hazardous, cannot avail appellee on the issue of proximate cause, for the reason that no one in the car was deceived in any way or given a false sense of security in any way, as they drove towards Fourth street crossing, by these circumstances.

██ When appellee rested her testimony, appellant moved for an instructed verdict, which was overruled. Thereupon it offered its testimony. After all the testimony was in, appellant moved a second time for an instructed verdict, which was overruled, to which ruling of the court it duly excepted, whereupon the case was sent to the jury, the special issues answered, the verdict received, and the jury discharged. Appellant did not make a motion for judgment non obstante veredicto. On this statement appellee advances the proposition that appellant is estopped now to insist that the verdict of the jury is without support in the evidence, and is barred of the right to ask for a reversal and rendition. This contention is overruled. Appellant was not required to move for a verdict non obstante veredicto in order to preserve its exception to the action of the court in refusing to instruct a verdict in its behalf.

The judgment of the lower court is reversed, and judgment here rendered in favor of appellant.

On Rehearing.

Appellee has asked for additional conclusions of fact, which we give in the language requested by her, modified and explained as indicated:

"Requested Conclusions of Fact

"(1) Defendant owned and operated a line of railway through Jefferson county and Beaumont. A switch or passing track parallelled its main line, about 20 feet therefrom, extending from its yards, westward about 110 car lengths distant, where it entered its main line. Both tracks crossed Fourth street in Beaumont, at grade. The tracks were elevated about three feet above the street level which gradually approached the crossing from a distance of about 50 feet. The bottom of a freight car standing on this crossing would be about 3 feet above the elevated portion of the street and about 6 feet above its level.

"(2) Fourth street was a through thoroughfare between the north and south sections of the city of Beaumont; was a paved street, and the only paved street west of the viaduct some six blocks east. It extended straight several hundred feet on both sides of the railroad tracks, which crossed it at right angles and the crossing was in no way obscured."

There was no testimony of the amount of "improvements" in the territory adjacent to this crossing, nor of its proximity to the "populated" section of the city, nor of the amount of travel on this street; as stated in our original opinion, there were no facts in evidence indicating that this crossing was "more than ordinarily hazardous," unless a conclusion to that effect may be drawn from these additional conclusions of fact.

"(3) On the night of the occurrence defendant left its yards over this passing track with a freight train consisting of 94 freight cars, engine and caboose, to enter its main line when it had been cleared by its regular east bound passenger train which was running behind schedule.

"(4) The freight train was moved at such speed that it blocked the Fourth street crossing for more than thirty minutes while killing time until its main line was cleared."

The freight train was in constant motion during the 30 minutes or more that it blocked the Fourth street crossing.

"(5) The time was around 12 o'clock at night; the freight cars were dark colored and unlighted and their presence blocking the crossing was not discoverable by persons traveling said street in automobiles until such time as the lights on their cars were elevated, by their approach, enough to shine upon the elevated box car, which distance would be about 50 feet therefrom. The noise of the train, at the speed it was moving, was not audible beyond that distance."

Appellant has filed exceptions to the fifth requested conclusion, but it has support, on the point to which appellant reserved its exception, by the following testimony: "Q. At the time of the collision and under the surroundings as they existed at the time as seen by you, at what distance could the train on said crossing have been seen by persons in an approaching automobile exercising proper care? A. Well, they couldn't have seen it so far because there wasn't any moon shining. The lights from the car

wouldn't have shown on the train until it got within 40 or 50 feet of it."

."(6) The lights of an approaching automobile, if not intercepted by any object in front of it, would shine under the freight cars and on the street beyond and give the illusion of an open, unobstructed highway ahead."

This conclusion is based upon the following testimony cited by appellee in its support:

Defendant's witness Wells said: "After you get right near the track, your lights reflect under the train—that is, right up close to it."

And the witness Mitchell says:

"Q. The light of your automobile would shine under the cars due to the crossing elevated? A. It might hit right at the bottom of the car.

"Q. That is a case—you mean 20 or 30 feet back? A. When you are right near the train.

"Q. After you get up on the incline? A. If you go on the incline, it naturally deflects your light upward."

Our fact conclusion under this sixth request is intended merely to give effect to the quoted testimony. On the issue of "illusion" we take the following summary of the testimony of appellee from appellant's exception to this sixth requested conclusion, and this testimony constitutes a part of our fact conclusion on that issue: "Miss Tulu Beard testified that as they approached the crossing there was no automobile coming from down the street from the opposite direction and on the other side of the railroad which would give them the illusion of an open track."

"(7) In this situation the automobile in which plaintiff was riding approached the crossing. Both she and the driver of the auto were strangers to that locality and did not know of the existence of the crossing. Ahead of them, and between them and the crossing another auto had stopped about 10 or 12 feet from the crossing blocked by the train. This standing auto was seen by the plaintiff and the driver of her car as they approached and as the lights from their car shone upon it and they took it to be a car which had parked at that place. At a proper distance from the parked car, the driver of plaintiff's car turned his car sufficiently to the left to pass the parked car.

"(8) In passing the parked car, when the lights from plaintiff's car were in position to strike the road ahead, the presence of the obstruction on the highway was first revealed to plaintiff and the driver of her car and they were then within a very few feet of the train. Instantaneously the driver of plaintiff's car applied his brakes and swerved to the right to pass in front of the parked car and regain his proper side of the highway and escape a collision."

The eighth requested conclusion is approved, with the qualification that appellee and the other occupants of the wrecked automobile testified that they did not see the train until they were "within approximately 5 feet of same."

"(9) Plaintiff's automobile immediately collided with the freight car across the crossing, the hood and front end passing underneath the freight car striking the center rods thereof, and the body of the auto, back of the hood, coming into contact with the bottom of the freight car. Plaintiff and the driver of her car were both rendered unconscious by the contact.

"(10) The automobile remained in this position, partly under the freight car, until the slowly moving train pushed or pulled it from under the freight car and clear of the track where it was left standing upright with its occupants, just clear of the passing cars and on and crossway the street.

"(11) The time was midnight, a very dark night, no surrounding lights of any kind and defendant gave no warning of the obstructed crossing in any way, such as, flagman, bell, whistle, zig zag, alarm, light, sound or otherwise.

"(12) Plaintiff was fully acquitted by the jury verdict, supported by sufficient evidence, of all negligence and no complaint thereof is made. Plaintiff suffered injuries in the collision."

By her motion for rehearing, appellee invokes the doctrine of res ipsa loquitur. That doctrine has no application to this case. She plead specific acts of negligence, and only specific acts of negligence were submitted to the jury. It is the general rule, reaffirmed by this court in Hawthorne v. T. & N. O. R. R. Co., 84 S.W. (2d) 1015, that allegations of specific acts of negligence bar the application of the doctrine of res ipsa loquitur. The following note on this proposition from Texas Law Review, vol. 14, No. 2, p. 277 (February, 1936) is in point against every contention appellee could make on the theory of res ipsa loquitur:

"Pleading—Res Ipsa Loquitur—Effect of Alleging Specific Acts of Negligence—Plaintiff was struck by a projection from one of defendant's trains, knocked under the moving cars, and injured. He sued for damages, his petition alleging specific acts of negligence. *Held,* that the allegation of specific acts of negligence prevents the application of the doctrine of res ipsa loquitur. Hawthorne v. Texas & N. O. R. R. (Beaumont Tex.Civ.App., 1935) 84 S.W. (2d) 1015.

"The rule of the principal case seems to be well established in Texas. Johnson v. Galveston, H. & H. R. R., 27 Tex.Civ.App. 616, 66 S.W. 906 (1902, writ of error refused); Lone Star Brewing Co. v. Willie, 52 Tex.Civ.App. 550, 114 S.W. 186 (1908, writ of error refused); Cecil & Co. v. Stamford Gas & Electric Co. (Tex.Civ. App.1922) 242 S.W. 536; Davis v. Castile (Tex.Com.App.1924) 257 S.W. 870; Wichita Valley Ry. v. Helms (Tex.Civ.App. 1924) 261 S.W. 225. The Texas cases also hold that where there are both specific and general allegations of negligence, the specific allegations will control and res ipsa loquitur will not apply. Galveston, H. & S. A. Ry. v. Herring (Tex.Civ.App.1896) 36 S.W. 129; Missouri, K. & T. Ry. v. Vance (Tex.Civ.App.1897) 41 S.W. 167; Houston, E. & W. T. Ry. v. Summers (Tex.Civ. App.1899) 49 S.W. 1106, affirmed 92 Tex. 621, 51 S.W. 324 (1899); Missouri, K. & T. Ry. v. Thomas, 63 Tex.Civ.App. 312, 132 S.W. 974 (1910). However, under the Texas system of alternative pleading, where there are allegations of specific acts of negligence and in the alternative a separate allegation of negligence generally, res ipsa loquitur will be applicable. Trinity & B. V. Ry. v. Geary (Tex.Civ.App.1914) 169 S.W. 201, reversed on other grounds, 107 Tex. 11, 172 S.W. 545 (1915); Schaff v. Sanders (Tex.Civ.App.1923) 257 S.W. 670, affirmed (Tex.Com.App.1925) 269 S.W. 1034; Wichita Falls Traction Co. v. Elliott (Tex.Com.App.1935) 81 S.W.(2d) 659.

"Some Texas cases have expressed the view that res ipsa loquitur should be applicable regardless of whether the allegations are of specific acts of negligence or of negligence generally. See Trinity & B. V. Ry. v. Geary (Tex.Civ.App.1912, writ of error dismissed) 144 S.W. 1045; Texas-Louisiana Power Co. v. Daniels (Tex.Civ.App. 1933, writ of error granted) 61 S.W.(2d) 179, 184; Wichita Falls Traction Co. v. Elliott, supra (Tex.Com.App.) 81 S.W.(2d) 659, at page 666. These cases apparently represent a weak minority view in this state but are in accord with many well reasoned judicial opinions outside this jurisdiction. Biddle v. Riley, 118 Ark. 206, 176 S.W. 134, L.R.A.1915F, 992 (1915); Firszt v. Capitol Park Realty Co., 98 Conn. 627, 120 A. 300, 29 A.L.R. 17 (1923); Cleary v. Cavanaugh, 219 Mass. 281, 106 N.E. 998 (1914); Dearden v. San Pedro, L. A. & S. L. R. R., 33 Utah, 147, 93 P. 271 (1907); Washington-Virginia Ry. v. Bouknight, 113 Va. 696, 75 S.E. 1032, Ann.Cas.1913E, 546 (1912); Walters v. Seattle, R. & S. Ry., 48 Wash. 233, 93 P. 419, 24 L.R.A.(N.S.) 788 (1908). Contra: The Great Northern, 251 F. 826 (C.C.A.9th, 1918); Kennedy v. Metropolitan St. Ry., 128 Mo.App. 297, 107 S.W. 16 (1907); Pierce v. Great Falls & C. Ry., 22 Mont. 445, 56 P. 867 (1899)."

Apart from the theory of res ipsa loquitur, appellee predicates her motion for rehearing on the issues of negligence submitted to the jury and that these issues were raised by the evidence. She makes no contention that she could strengthen her case upon another trial, nor that she could offer evidence upon any issue not submitted to the jury. The only proposition in this case, as originally briefed by appellant and as presented by appellee's motion for rehearing, is simply whether or not the issues submitted to the jury have support in the evidence. If they have support, then the judgment of the lower court should be affirmed; if they do not have support, then the judgment of the lower court should be reversed and judgment here rendered for appellant. It is our conclusion that, as a matter of law, the verdict of the jury is without support; for that reason, appellee's motion for rehearing is in all things overruled.